SCHEUER, Respondent, vs. MANITOWOC & NORTHERN TRAC-
TION COMPANY, Appellant.

*October 27—November 14, 1916.*

*Street and interurban railways: Negligence: Collision: Horses be-
yond control: Duty of motorman: Appeal: Review: Questions
of fact: Evidence: Competency: Harmless errors: Instructions to
jury.*

1. If the motorman of an electric car observes, or in the exercise of
   ordinary care should observe, a person with his team in the
   zone of danger from such car, or liable to enter such zone, and
   that the horses are not under control, it is the duty of such
   motorman to exercise ordinary care to prevent a collision.
2. The verdict of a jury cannot be disturbed on appeal if there is
   any credible evidence to support it.
3. Findings by the jury in this case that plaintiff's horses were be-
   yond his control from the time they left a concrete way, which
   was parallel with defendant's interurban railway within the
   limits of the highway, until they were struck by a car, and that
   the motorman knew that fact in time to have prevented the
   collision by slowing or stopping the car, are *held* to have sup-
   port in the credible evidence.
4. There being other uncontradicted evidence that the value of plaint-
   iff's horse, which was killed, was as found by the jury, there was
   no prejudicial error in permitting plaintiff to testify, in respect
   to its value at the time it was killed, that he had been offered
   $225 for it.
5. It was not error to refuse to permit defendant to show, on cross-
   examination of plaintiff, that he asked, a half hour or so after
   the accident, if the motorman could not have stopped the car
   quicker; nor to refuse to permit him to state whether he did
   not make up his mind at the time of the accident that his in-
   juries were the result of the motorman's negligence.
6. The fact that the doctor who attended plaintiff had stated that
   while the injury to plaintiff's eye might become permanent, he
   could not say it would be so, did not preclude him from giving
   his opinion that the injury would become chronic.
7. The error, if any, in submitting to the jury the question whether,
   at the time the motorman set the brakes, the car was being run
   at a negligent rate of speed under the existing circumstances,
   was not prejudicial, it appearing that the result of the trial

would have been the same if the question had been omitted from the special verdict.

8. It is not error to refuse to give requested, proper instructions if the same, in letter or substance, are given in the general charge.

9. In an action for injuries to person and property caused by an electric car colliding with plaintiff's team, instructions to the jury as to the question whether the horses were beyond plaintiff's control for some time prior to the accident, as to the motorman's knowledge of that fact and his negligence in failing to slow up or stop the car, and as to whether the car was going at an excessive rate of speed, are *held* to have been warranted by the evidence and not to have invaded the province of the jury.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Action to recover for injuries to person and property, claimed to have been caused by defendant's negligence.

The defendant operated an interurban railway between Manitowoc and Two Rivers, Wisconsin. The track was located in the highway, alongside of and a few feet away from a concrete traveled track. Plaintiff claimed that, as he was driving his team of horses, hitched to a lumber wagon, along such concrete way, the horses became unmanageable, the one furthest from the track crowded the other toward such track and into the pathway of a car which was approaching at great speed from behind; that the motorman saw, when he was a considerable distance away, that if he did not slow up or stop his car, it was liable to collide with the team; that he not only did not make any effort to guard against the danger, but sounded the car whistle, sharply, which increased the unmanageableness of the team so plaintiff could not keep the same clear from the track, and in consequence, the car struck the horse which was on the track and the wagon, killing the horse, injuring the wagon, and throwing plaintiff therefrom and greatly injuring him.

The issues as made by the pleadings, and in respect to which there was evidence in the judgment of the trial court

to carry them to the jury, are fairly indicated by the following special findings which are stated in an abridged form:

1. From the time the horses, or one of them, was off the concrete on the highway until the accident, the horses were beyond plaintiff's control.

2. The motorman knew such condition in time for him to have prevented the collision.

4. The motorman was negligent in not avoiding the collision.

5. Such negligence was a proximate cause of the injuries complained of.

6. When the motorman applied the brakes, the car was moving at a negligent rate of speed, under the circumstances.

7. Such negligence was a proximate cause of the injuries complained of.

8. Plaintiff was not guilty of contributory negligence.

9. It will require $335 to compensate plaintiff for the injuries to his horses, $11 for damages to his harness and wagon, and $763.50 for injuries to his person.

In reaching the conclusions indicated, the jury had for consideration evidence to this effect: Plaintiff, as he was driving his team along the concrete way near the railway track, saw defendant's car coming when it was some 400 feet away and to his left. The near horse was not disturbed by the presence of the car but the off one became very restive and commenced trying to plunge forward. The effect thereof was to crowd the near horse toward the track. Soon both horses left the concrete way, veering near to the track and the indications were, and fact was, that plaintiff could not prevent it. The motorman observed that condition when he was some 200 feet from the wagon. He thought there was some danger. The team continued on a slanting course down into the ditch between the margin of the concrete way and the track, then along such ditch and, finally, the near horse was crowded

onto the track, plaintiff endeavoring all the time to control the team and signaling, at one time, with upraised hand, to the motorman of his plight. He raised his hand when the horses were in the ditch and some 150 feet from the coming car. They traveled in the ditch, close beside the track, for from 75 to 100 feet before the near horse was crowded onto the track. The danger zone was so invaded some seventy feet in advance of the car. It could easily have been stopped after the motorman saw the team was veering toward the track and was liable to enter its pathway, before the point where the collision took place. He did not do so. When not far from such point he sounded the car whistle which increased the unmanageableness of the horses, particularly the off one. The car struck the wagon, or near horse, or both. Thereby, or by the springing of the horses at the instant the car struck, the front wheels were jerked clear from the hind wheels and the wagon box. The horses with the front wheels went some seventy feet after the collision. The car came to a stop so that the horses were near the rear step. The near horse was on the ground and fatally injured, its back being broken. Plaintiff fell between his wagon and the car. He was severely injured, particularly in his right eye.

Counsel for defendant moved the court to change the findings so as to entitle it to judgment, and for judgment notwithstanding the verdict, and made other motions and saved exceptions requisite to raise the questions for consideration on appeal; referred to in the opinion. Such motions were denied and, on motion of counsel for plaintiff, judgment was rendered in his favor for the amount assessed in his favor by the jury.

For the appellant there was a brief by *Nash & Nash,* and oral argument by *E. G. Nash.*

For the respondent there was a brief by *Martin, Martin & Martin,* and oral argument by *J. F. Martin.*

MARSHALL, J.   The main grounds of complaint presented for consideration are that the evidence does not support the finding that respondent's horses were beyond his control during the time which elapsed between the instant of their swerving from the concrete way toward the railway track and the instant of the collision, or the finding that the motorman knew such condition in time to have enabled him to have prevented the collision by slowing up or stopping the car.   It is not claimed, and could not reasonably be, that the motorman was not actionably negligent, if the facts were as found by the jury.   Certainly, if a person in charge of an electric car observes, or by the exercise of ordinary care should observe, another with his team in the zone of danger from such car, or liable to enter such zone, and that the horses are not under his control, it is the duty of such person to exercise ordinary care to prevent colliding with them.   That is so clear, as a principle, that no illustrations of its application are necessary.   If it were otherwise, *Wilson v. Chippewa Valley E. R. Co.* 120 Wis. 636, 98 N. W. 536, would be sufficient.

Seldom has such an earnest and confident appeal been made to this court to examine the evidence in a case in respect to a contention that it is insufficient to support the findings of the jury, as counsel for appellant made at the bar and in their written brief.   They do not seem to go so far as to claim there is no evidence to support the vital findings referred to; but insist that such findings are against the great preponderance, or overwhelming preponderance, of the evidence.

As counsel earnestly requested, we have made a careful study of the evidence in all its bearings, without being able to conclude that there is no credible evidence to support the findings.   To embody the evidence here and point out in detail those portions which support the findings, would require a very long opinion which would not be of any particular

value as a guide in future cases or illustrate any principle which has not been illustrated so often as to become as familiar as it can well be.

The verdict of a jury cannot be disturbed on appeal to this court if there is any credible evidence to support it. It may appear by the printed record to be against the preponderance of the evidence, and yet if there was some believable evidence, in any reasonable view of it, giving due weight to the superior advantages possessed by the trial court and jury for discovering the truth, and the fact that such court deliberately passed upon the matter in submitting the case to the jury and again in refusing to set aside the verdict as contrary to the evidence, and that such determination, in the light of the presumption in its favor, must be taken as correct unless it appears to be clearly wrong, the decision cannot be disturbed here. The law is so well settled in that regard that the rule stated is practically one of jurisdiction. It is solely the province of the trial court to set aside a verdict and grant a new trial upon the ground that it is against the preponderance, or even the great preponderance, of the evidence, if there is yet some credible evidence upon which it can rest.

After devoting all the labor to a study of the evidence which could efficiently aid in coming to a right conclusion, we are quite far from being able to decide that the vital findings which counsel attack are wholly unsupported. As indicated in the statement, there is evidence tending to support such findings and that is sufficient. That there are conflicting views which could be taken of the matter, is evidenced by the fact that counsel for respondent, as confidently, contend that the great preponderance of the evidence is in favor of the findings as counsel for appellant contend to the contrary. It seems that, notwithstanding frequent references here to the weight that must be given to a jury finding, affirmed by the trial court, that is sometimes not fully appreciated, and so it happens that cases are presented where this court is urged to consider the evidence as a jury is required to consider the

same, and to exercise the discretion exclusively given to the trial court to grant a new trial upon the ground that the preponderance, or great preponderance, of the evidence is contrary to the jury determination. Of course, we must and do appreciate that the evidence is liable to appear quite different to the losing than to the prevailing party and that explains how it happens that counsel for appellant, as here, confidently contend that the verdict is without support in the evidence, or is against the great preponderance thereof, while counsel for respondent, just as confidently, contend that the preponderance of the evidence is in support of the verdict, or preponderates so significantly that way that no other verdict could reasonably have been rendered. That illustrates the importance of maintaining, in all its integrity, the rule before stated.

Nothing further need be said on the subject of whether the first two findings have efficient support in the evidence. It might be more satisfactory to counsel for appellant if we were to take time and space to quote the evidence thought to support such findings, but if opinions in such cases as this were customarily written that way, the books would be filled up with useless matter as regards principles and making valuable precedents. The course adopted here is not taken to lessen judicial labor. If it were best, the writer would gladly write at considerable, or even great, length to demonstrate that there is support in the evidence for the jury findings, by referring to such evidence in detail, but the idea to the contrary seems best. All has been done in this instance to promote justice between the parties which can be consistent with the established unwritten law. It has all the force of written law. Thereby the findings of the jury, on the question of whether they have efficient support in the evidence, must be regarded as verities.

It is suggested that errors were committed in receiving and rejecting evidence in the following particulars:

1st. In permitting respondent to testify in respect to the

value of the horse which was killed, that he had been offered $225 therefor.

2d. In refusing to permit appellant to show on cross-examination of respondent that he asked, a half hour or so after the accident, if the motorman could not have stopped the car quicker.

3d. In refusing to permit respondent to state whether he did not make up his mind at the time of the accident that his injuries were the result of negligence of the motorman.

4th. In permitting the doctor who attended respondent to testify that he found in the latter's eye a chronic condition.

. There was, in any event, no prejudicial error on the first point as there was considerable uncontradicted evidence that the value of the horse, at the time it was killed, was as found by the jury.

In respect to the second point, it does not seem material whether respondent asked the question or not.

In respect to the third point, at what time respondent made up his mind his injuries were the result of the motorman's negligence was clearly unimportant. It could not have any legitimate bearing on the vital questions in the case.

In respect to the fourth point, the evidence was proper. The fact that the doctor had stated that while the injury to the eye might become permanent, he would not say it would be so, did not preclude him from giving his opinion that the injury would become chronic.

Further error is assigned on the court's submitting to the jury the question of whether, at the time the motorman set the brakes, the car was being run at a negligent rate of speed, under the existing circumstances.

It does not seem that any fault can well be found because of the submission of that question. The result of the trial would have been the same if it had been omitted. Strike the question and answer out of the verdict and what remains will make a perfect basis for the judgment which was rendered.

It is further suggested that errors were committed in respect to instructions given to the jury in these particulars:

1st. In refusing to instruct the jury as requested.

2d. In stating to the jury, in respect to whether the horses were not under control of respondent for some time immediately prior to the accident, that before they should so find they "should be satisfied from the evidence that by rearing, jumping, crowding, or some other like acts or conduct, or by the course which the horses took in going from the concrete bed of the highway to the railway track, or by such acts in more than one of those respects, and by the greater weight of the evidence on the subject . . . that plaintiff was not able, by proper and reasonable efforts, to control the horses, nor to guide or stop them, nor to keep them off from the defendant's car track, and that he made such effort and used ordinary care and skill in that respect."

3d. In instructing the jury to the effect, in respect to the question of whether the motorman knew the horses were beyond control of respondent in time to have prevented the collision by slowing up or stopping the car, that they should take into consideration the evidence tending to show that the horses were off the concrete way for a considerable distance and went in a slanting direction therefrom to the railway track and were a considerable time in going that distance.

4th. In stating to the jury that, in case they failed to find the motorman knew that the horses were beyond control of the driver in time to have enabled him to prevent the collision by slowing or stopping the car, in determining whether the exercise of ordinary care by the motorman would have disclosed to him that the horses were beyond control of the driver in time to have enabled him to prevent the collision by slowing or stopping the car, in substance that they should consider what was said in regard to the second question and whatever appeared from the evidence as to the distance the horses traveled from the time they left the concrete way until they got

on the railway track, and whether they went directly on to the track or took a slanting course.

5th. In instructing the jury in respect to whether it was negligence on the part of the motorman not to have slowed or stopped the car in time to have prevented the collision, in effect, that it was not the duty of the motorman to slow or stop the car unless it was, or would have been, reasonably apparent to him, by the exercise of ordinary care, that the horses were liable to get beyond the driver's control and that there might probably be a collision of the team with the car unless it was prevented or avoided by the motorman's act.

6th. In instructing the jury in respect to the sixth question, covering the subject of whether the car was going at an excessive rate of speed, under the circumstances, when the brakes were applied by the motorman, in effect, that a rate of speed of twelve miles an hour under ordinary circumstances would not be excessive but under the circumstances of the case, taking into consideration what the motorman knew, or ought to have known, it was for the jury to say whether the car was going at a negligent rate of speed or not when the brakes were applied.

We have thus grouped the complaints as to instructions for the purpose of brevity and convenience and will deal with each as the merit thereof seems to require.

It is a sufficient answer to the first suggestion that counsel, in their brief, practically concede that most of the requested instructions were embodied in those which the court gave, and our attention is not directed to anything which was prejudicially omitted. It is not error to refuse to give requested, proper instructions if the same, in letter or substance, are given in the general charges. *Ryan v. Oshkosh G. L. Co.* 138 Wis. 466, 473, 120 N. W. 264; *Herlitzke v. La Crosse I. T. Co.* 145 Wis. 185, 190, 130 N. W. 59.

It is said that, by the language used by the court under the second head above mentioned, the jury were, in effect, told

that the course the horses took in going from the concrete way to the track was evidence that they had gotten beyond the driver's control and they might so find upon such circumstance if unable to determine the fact by reason of the horses rearing, running, jumping, crowding, or some other like acts. That is hardly a fair construction of the charge. The jury were told that they must determine by evidence on one or more of the circumstances, but left it entirely to them as to the weight they should give to any such circumstances and whether any such circumstance was satisfactorily shown to exist.

The third of counsel's suggestions is so involved with the second that nothing special need be said in respect to it. We cannot agree with counsel that there was no evidence that the horses went in a slanting course from the concrete way to the track. There was evidence tending to prove that the horses were off the traveled track for a considerable time before the railway track was invaded, the off horse all the time crowding the near one toward such track.

The complaint under the fourth head is that the court placed too much weight upon the inferences to be drawn from the course which the team took in going from the concrete road to the highway. The court did not draw any such inference, as we read the instructions; but left the matter wholly to the jury to draw such inferences as they thought proper from whatever, in their judgment, the facts were as established by the evidence. There was considerable evidence bearing on all the matters referred to in the instruction.

The instruction mentioned under the fifth head was a correct statement of law. If it was reasonably apparent to the motorman, or would have been by the exercise of ordinary care, that the horses were beyond the driver's control, and hence that there was a probability of the car striking them unless it was slowed up, or stopped, very clearly it was his

duty to exercise all reasonable care to do so.    The instruction was fully warranted, as we have heretofore said, by *Gould v. Merrill R. & L. Co.* 139 Wis. 433, 121 N. W. 161.

We perceive no good reason why the instruction mentioned under the sixth head was erroneous.    There was much evidence bearing on the subject and the matter seems to have been fairly submitted.

We have now dealt with all the suggestions made by counsel for appellant without  discovering any reason why the judgment complained of should be disturbed, and it must therefore be affirmed.

*By the Court.*—Judgment affirmed.