KALASHIAN, Respondent, vs. HINES, Director General of Railroads, Appellant.

*April 8—May 4, 1920.*

*Railroads: Federal employers' liability act: What law governs: Questions for jury: Contributory negligence: Effect on damages: Assumption of risk: Negligence of fellow-servant: Appeal: Issues not controverted at trial: Submission of unnecessary question harmless error.*

1. At the trial of an action by an employee of a railroad for injuries, a suggestion by the court, acquiesced in by defendant, that it was sufficiently shown that a certain transfer track was used indiscriminately for interstate commerce,

indicates that this fact was not disputed, and the question cannot be raised by the defendant on its appeal from a judgment in favor of plaintiff.

2. A railroad employee, injured while engaged in repairing a track which was an instrumentality in interstate commerce, had a right to recover under the federal employers' liability act (35 U. S. Stats. at Large, 65, ch. 149) rather than the state workmen's compensation act.

3. In actions under the federal employers' liability act, questions of the injured employee's or defendant employer's negligence in connection with the injury are controlled by the principles declared by the federal rather than by the state courts.

4. In an action under the federal act by a railroad sectionman for loss of his legs when run over by a switch engine, questions of negligence on the part of the crew in charge of its switching engine are for the jury under conflicting evidence.

5. The evidence in this case is *held* to show that plaintiff, who, after seeing the engine, paid no further attention to it while crossing the track diagonally on his way to a handcar with a load, was negligent; and also to justify a finding that there was a want of ordinary care in the management of the switch engine by the switching crew at the time of the injury which was the proximate cause of the accident.

6. Under the federal act, negligence of the injured employee proximately contributing to his injury merely diminishes proportionately the amount of his recovery for the negligence of his employer, also so contributing; and although the employee himself was negligent, negligence by the railroad also having been found, his negligence cannot be deemed the sole proximate cause of his injury.

7. Under the federal act there is no assumption of risk of the negligence of a fellow-servant by a co-employee until at least actual knowledge of such particular negligence is brought to his attention, or it is so obvious that an ordinarily prudent person would observe it.

8. Error in the submission of two questions of a special verdict which were unnecessary to determine the rights and liabilities of the parties, is harmless and would not warrant the reversal of a judgment for plaintiff.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

The plaintiff, a railroad sectionman in defendant's employ, was on May 20, 1918, at about half-past 3 o'clock

in the afternoon, in defendant's yard at North Fond du Lac, run over by a switch engine, losing both legs. He was about thirty-seven years of age, by birth an Armenian, and had been in this country five years. He was able to talk but slightly, if any, in any language than that of his birth, and could not read or write. He had been employed as sectionman for the Minneapolis, St. Paul & Sault Ste. Marie Railway Company for about three months prior to the injury and had had about four years' experience as such sectionman.

In the switch yards in question there were maintained three main lead tracks running substantially north and south at a point where they were diagonally intersected by a public highway called the Lake Shore drive. The yard was used for the breaking up and making up of freight trains, and the plaintiff was familiar with the situation and the use of said tracks, and during the period of his employment had been living in a bunk car within a few feet of the track and but a short distance from the point where he was injured. The ground at this location was level and there were no buildings or other obstructions to the sight so far as the switch engine in question and the location involved in this accident are concerned. On the afternoon in question the section crew with which he was working were required to load material and tools on their handcar at the place where it was then located south of the Lake Shore drive and just a little to the east of the most easterly of the tracks.

The foreman of the crew was in the tool house, which was located west of the tracks and just north of the Lake Shore drive, and the plaintiff was there given by such foreman a keg of railroad spikes, weighing about twenty-five pounds, which he carried in his arms in front of his body, at the same time having, as he testified, his maul on one arm. He was directed by the foreman to proceed in a hurry towards the handcar, at which were already one or

more of his fellow sectionmen. He started from the tool house in a southeasterly direction toward the handcar. As he stepped out of the tool house his testimony is to the effect that he looked to the north and saw the switch engine in question then coupled to several cars, but standing at a point at least sixty feet north of the said Lake Shore drive. The distance of the handcar was about 200 feet from the tool house. He did not look again toward the switch engine. Just as he was stepping over the west rail of the center of the three lead tracks and at a point 144 feet from the door of the tool house from which he started and from which he had been approaching the track at an angle of about thirty degrees, he was struck by the switch engine coming from the north, resulting in his injury. The switch engine with seven or eight cars attached stopped within about twenty-five feet after so striking the plaintiff. The point where the accident occurred was 119 feet south from the crossing of the center track with the Lake Shore drive, and the width of that highway was sixty feet.

The place where it was planned to go with the section crew of which plaintiff was a member, together with the material which was being taken to the handcar, was to a transfer track about 300 feet long between the Sault line and the St. Paul railway, about a mile and a half from where the accident occurred. The purpose in so going was to repair such transfer track, which had become out of order by reason of an engine having been derailed thereon.

Defendant's records were produced by plaintiff on the adverse examination of one of the defendant's clerks, and it appeared therefrom that, for a period of at least a month prior to the time of the injury, loaded freight cars received from points without the state of Wisconsin and consigned to firms in Fond du Lac were almost daily moved over such transfer track. After a number of such records had been offered on plaintiff's behalf the court then suggested to plaintiff's counsel: "Haven't you gone far enough with

this?" To which suggestion plaintiff's counsel acceded, and defendant's counsel said: "That is all." The court then said: "I don't see that there is any question about the proposition that this is a connecting track used indiscriminately for interstate purposes." No objection was interposed by defendant to such disposition of the question and no testimony was offered by defendant as tending to impeach or contradict the effect of such record testimony as to the transfer track being used for switching cars containing shipments of interstate freight.

But two of the several grounds of negligence alleged in the complaint were submitted to the jury by the trial court in the special verdict. By such special verdict the jury found as follows:

(1) The engine crew did not use ordinary care in respect to keeping a lookout ahead as they approached the plaintiff.

(2) The engine crew did not use ordinary care in respect to ringing the bell as they approached the plaintiff.

(3) That such want of ordinary care thus found was the proximate cause of plaintiff's injury.

(4) That there was a want of ordinary care on plaintiff's part that proximately contributed to produce his injury.

(5) That plaintiff's negligence contributed to his injury in the proportion of forty per cent. as compared to the total negligence of the engine crew and his own negligence.

(6) The plaintiff did not know that the engine crew were likely to move the engine south of the road without ringing the bell.

(7) The plaintiff did not know that the engine crew were likely to move the engine south of the road without keeping a lookout ahead.

(8) "Would a person of plaintiff's experience, information, intelligence, and knowledge of the English language have known, in the exercise of ordinary care, that the engine crew was likely to move the engine south of the road without ringing the bell? A. No."

(9) A question similar to No. 8, but inquiring as to the moving of the engine without keeping a lookout ahead, which was also answered No.

(10) Twenty-five thousand dollars will compensate the plaintiff for his injuries.

After respective motions by the parties the court directed a verdict in favor of the plaintiff for sixty per cent. of the amount of the verdict, with interest, costs, and disbursements. From the judgment entered in accordance therewith defendant has appealed.

For the appellant there was a brief by *W. A. Hayes* of Milwaukee, attorney, and a separate brief by *John F. Kluwin* of Oshkosh, attorney, and *Paul Stover* of Milwaukee and *T. L. Doyle* of Fond du Lac, of counsel; and the cause was argued orally by *Mr. Kluwin* and *Mr. Hayes.*

For the respondent there was a brief by *Barton & Kay* of St. Paul and *Walter D. Corrigan* of Milwaukee, and oral argument by *Mr. Corrigan.*

ESCHWEILER, J.    The substance of appellant's contention on this appeal is that the court erred in its ruling on the following points:

(1) That the plaintiff was not so employed in interstate commerce as to bring his right of action within the federal employers' liability act and that his sole right was under the provisions of the workmen's compensation act of Wisconsin.

(2) In submitting to the jury any question as to alleged negligence on the part of defendant as a proximate cause of the injury and in sustaining their verdict in so finding.

(3) In failing to hold as a matter of law that the plaintiff's negligence was the sole cause of his injury.

(4) In failing to hold as a matter of law that the injuries which the plaintiff received were by reason of a risk which he had assumed under his employment.

(5) For the court's failure to submit a question in the special verdict as to the assumption of risk and in submitting questions (8) and (9) above specified and in failing to give appropriate instructions as to the assumption of risk and

giving erroneous instructions on the question of defendant's alleged negligence.

It must be considered as an accepted fact in this case that at the time of the injury the plaintiff was, within the scope of his employment, proceeding to the handcar for the purpose of immediately going with the rest of the section crew to repair a portion of the tracks used by the Sault Railway in interstate as well as intrastate traffic.

The evidence from defendant's own records as to the character of freight that was being transported practically daily over this transfer track, and further offer of such class of testimony being stopped at the suggestion of the court as quoted from the record, and the evident acquiescence by defendant's counsel at that stage of the case with the ruling of the court, makes it clear that it was not disputed on the trial and cannot now be urged that the track proposed to be repaired was not clearly an instrumentality used in interstate commerce. It was as much so as was the bridge at which the injured plaintiff was employed in carrying spikes in the case of *Pedersen v. D., L. & W. R. Co.* 229 U. S. 145, 33 Sup. Ct. 648, or where the injured employee was removing snow between tracks used for both kinds of traffic (*N. Y. Cent. R. Co. v. Porter,* 249 U. S. 168, 39 Sup. Ct. 188), and the ruling in those cases we consider binding upon us in the instant case. The following cases also are in point: *Louisville & N. R. Co. v. Parker,* 242 U. S. 13, 37 Sup. Ct. 4; *Southern R. Co. v. Puckett,* 244 U. S. 571, 37 Sup. Ct. 703; *Philadelphia, B. & W. R. Co. v. Smith,* 250 U. S. 101, 39 Sup. Ct. 396; *Frazier v. Hines,* 260 Fed. 874; *Kansas City S. R. Co. v. Martin,* 262 Fed. 241.

It is therefore held in this case that the plaintiff's right to recover was under the federal act rather than the Wisconsin workmen's compensation act, and the rulings of the court below in that regard were proper and are upheld.

In a case like this under the federal liability act, questions of either plaintiff's or defendant's negligence in connection

with the injury are controlled by the principles declared by the federal courts rather than those of the state courts. *Yazoo & M. V. R. Co. v. Mullins,* 249 U. S. 531, 39 Sup. Ct. 368; *New Orleans & N. E. R. Co. v. Harris,* 247 U. S. 367, 371, 38 Sup. Ct. 535; *N. Y. Cent. & H. R. R. Co. v. Tonsellito,* 244 U. S. 360, 37 Sup. Ct. 620; *Southern R. Co. v. Gray,* 241 U. S. 333, 36 Sup. Ct. 558; *Frazier v. Hines,* 260 Fed. 874, 880. It may be said in passing, however, that no substantial difference appears in the rulings in this state upon the questions here involved and the rulings of the federal courts.

The case was correctly submitted to the jury under the evidence in this record as to the questions of the alleged negligence on the part of the crew in charge of the switching engine as embodied in the first and second questions of the special verdict.

The conflicting testimony in this case was such that it made it proper for the jury rather than the court to determine where the truth lay with reference to the following situations:

First, whether, when plaintiff started from the tool house towards the handcar in a diagonal direction leading to and across defendant's tracks, the switch engine was sixty feet or more north of the highway crossing, or whether it was just momentarily stopped on the crossing itself to permit of the very brief operation of uncoupling one or more cars from the set of cars then being switched; and whether it was in a state of rest at the time the plaintiff so started.

Second, whether or not the bell on the locomotive was ringing as the switch engine was going south and over the space between the highway crossing and the point of injury.

Third, whether it was the custom in this particular switch yard that a warning by the ringing of the bell should be given as such switch engines were in motion under circumstances similar to those shown in this case, or whether it was a custom restricted to the giving of such warning when the

engine was just starting to move, at highway intersections and when persons employees or others were discovered by the engine crew on the roadbed and at or near a point of danger.

It is a conceded fact under the plaintiff's own testimony that he was familiar with switching operations, the constant moving of switch engines up and down those tracks, and the likelihood of such engines being so in operation while he was so crossing the tracks, and that he did not look towards the switching engine after leaving the tool house. It must also be treated as a conceded fact that had he looked at or just before stepping upon or within two or three feet of the west rail of the center track he could have seen the approaching engine and have avoided the accident.

It also appears that the engine was backing to the south at the time of the accident and that the engineer was on the opposite side of the engine from that on which the plaintiff was approaching, and that the fireman was engaged in coaling the fire and had but a momentary glimpse of the plaintiff just as the latter was stepping into the zone of danger, and that he immediately gave notice to the engineer.

There is no escape from the conclusion on the testimony in this case, and a verdict to the contrary could not have been sustained, that there was negligence by the plaintiff proximately contributing to his injury.

The situation presented, however, was one in which the evidence can and does uphold a finding by the jury that there was a want of ordinary care in the management by the switching crew of the switching engine in question at the time of the injury which was a proximate cause of the accident. If the bell as a matter of fact did not ring,—and we surely cannot say under the testimony in this case as a matter of law that it did ring,—then a finding by the jury that such failure to ring was a want of ordinary care is a logical and legal conclusion.

There was no violation by defendant of the statutory re-

quirements as to the make-up of the engine crew; no negligence could be predicated on that ground. Momentary failure on the part of either or both the engineer and fireman to have a continuous, constant watch within a reasonable distance on both sides of the track ahead of the train also could not be considered of itself sufficient to warrant a finding of actionable negligence. *Shaffer v. M., St. P. & S. S. M. R. Co.* 156 Wis. 485, 495, 145 N. W. 1086.

The situation here, however, presents one where such switch engines are constantly moving up and down the tracks upon which or across which other employees are required by their employment to go upon or across. While this engine was proceeding a distance of about 120 feet from the center of the highway where the engine was standing, as testified to by defendant's witnesses, at the last time it stopped prior to the accident, or considerably more if it was north of the track as testified to by the plaintiff and his witnesses, the plaintiff was in plain sight carrying the keg of spikes and the maul, and approaching at a diagonal which if continued was bound to bring him within the zone of danger, and with his head turned in a direction more away than towards the approaching train.

We think, therefore, that however negligent he may have been himself in thus approaching the track, it was a proper consideration for the jury as to whether or not the defendant's train crew were also not negligent in failing to watch for and guard against injury to their fellow-servants, who in obeying lawful directions of their superior officers might reasonably be anticipated to occupy a position similar to that of plaintiff towards the moving train. *Norfolk & W. R. Co. v. Earnest,* 229 U. S. 114, 119, 33 Sup. Ct. 654; *Southern R. Co. v. Smith,* 205 Fed. 360; *Delaware, L. & W. R. Co. v. Hughes,* 240 Fed. 941; *Lehigh Valley R. Co. v. Scanlon,* 259 Fed. 137, 141.

Defendant insists that this case must be controlled in its favor by the ruling of the federal court in the case of

*Aerkfetz v. Humphries,* 145 U. S. 418, 12 Sup. Ct. 835. There the plaintiff, a track repairer, familiar with the manner of work, was injured by the slow movement of an engine pushing two cars against him, he standing with his back to the approaching cars at work without looking or watching for the engine. It was there held that there was no reasonable ground under the evidence to charge the duty on the engineer of expecting that an employee so stationed would pay no attention to his own safety. The court there expressed the opinion that the ringing of bells and sounding of whistles under such circumstances would have simply tended to confusion. That court held that there was no negligence by defendant, and that in any event the negligence of the plaintiff himself was such as to defeat his right of recovery. At the time of that decision negligence of a plaintiff proximately contributing to his injury defeated his right of recovery. Now under the federal statute the contributory negligence of a plaintiff so proximately contributing to his injury, there being also negligence by the defendant also so contributing, has no other effect than to diminish proportionately the amount of plaintiff's recovery. So long as the situation disclosed negligence on the part of both the plaintiff and defendant, each of which contributes in some degree as a proximate cause of the injury, it is a question only of the apportionment of the damages rather than a bar to the plaintiff's right of recovery. *Norfolk & W. R. Co. v. Earnest,* 229 U. S. 114, 122, 33 Sup. Ct. 654; *Grand Trunk W. R. Co. v. Lindsay,* 233 U. S. 42, 49, 34 Sup. Ct. 581; *Seaboard A. L. Ry. v. Tilghman,* 237 U. S. 499, 501, 35 Sup. Ct. 653; *Ill. Cent. R. Co. v. Skaggs,* 240 U. S. 66, 70, 36 Sup. Ct. 249; *N. Y. C. & St. L. R. Co. v. Niebel,* 214 Fed. 952; *Lehigh Valley R. Co. v. Scanlon,* 259 Fed. 137; *Ewig v. C., M. & St. P. R. Co.* 167 Wis. 597, 606, 167 N. W. 442, 169 N. W. 429.

We cannot consider that the facts here as to defendant's negligence are so parallel with those in the *Aerkfetz Case,*

*supra,* as to make that decision controlling here on either question involved.

That the plaintiff himself was negligent is beyond question, but, negligence by defendant having been found, the plaintiff's negligence cannot be deemed the sole proximate cause. *Union Pac. R. Co. v. Hadley,* 246 U. S. 330, 333, 38 Sup. Ct. 318.

This view of the situation disposes adversely to defendant of its main contentions on this appeal.

The failure to submit the question of assumption of risk was not error. The negligence of the defendant was that of a fellow-servant of plaintiff. As to such negligence there is, under the federal law, no assumption of risk by a co-employee until at least actual knowledge of such particular negligence is brought to his attention or it is so obvious that the ordinarily prudent person would observe it. *Erie R. Co. v. Purucker,* 244 U. S. 320, 324, 37 Sup. Ct. 629; *Chesapeake & O. R. Co. v. De Atly,* 241 U. S. 310, 315, 36 Sup. Ct. 564; *Chesapeake & O. R. Co. v. Proffitt,* 241 U. S. 462, 36 Sup. Ct. 620; *Lehigh Valley R. Co. v. Scanlon,* 259 Fed. 137, 142; *Kansas City S. R. Co. v. Martin,* 262 Fed. 241, 244; *Reul v. Wis. N. W. R. Co.* 166 Wis. 128, 134, 163 N. W. 189; *Ewig v. C., M. & St. P. R. Co.* 167 Wis. 597, 606, 167 N. W. 442, 169 N. W. 429.

Submission of questions (7) and (8) of the special verdict, quoted in the statement of facts, being of unnecessary elements under the issues requisite to determine the respective rights and liabilities of the parties, if error at all, was not such as would warrant a reversal of the judgment.

*By the Court.*—Judgment affirmed.