RICHTER, Administrator, Respondent, vs. CHICAGO, MIL-
WAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*December 16, 1921—February 7, 1922.*

*Federal employers' liability: Car repairer returning from inter-
state employment: Contributory negligence: Boarding mov-
ing train: Proximate cause: Reasonable anticipation.*

1. A railroad employee sent from one city to another to make
   repairs on cars being used in interstate commerce was en-
   gaged in "interstate commerce" when, having finished the
   repairs and on his return to report to the foreman, he was
   killed by a passenger train on another track while attempt-
   ing to board a moving freight train.
2. Under the federal Employers' Liability Act, contributory neg-
   ligence of the injured employee, if his negligence and that
   of defendant proximately concur in causing the injury, is
   not a complete defense but only a ground for apportionment
   of damages.

3. In the absence of proof that the employee had previously been permitted to ride upon a freight engine contrary to a positive rule of the railroad company, the jury was not justified in deciding that it was the duty of the engineer to stop the engine for the purpose of permitting him to get aboard and to ride to another city where it was his duty to go.

4. In actions of this character the plaintiff must prove not only that defendant was negligent, but also that such negligence was the proximate cause of death.

5. The rule that one whose wrongful act causes the doing of another act which results in injury is responsible for the consequences which flow from the latter act is based upon the fact that the wrongdoer, using reasonable diligence, should have foreseen the result; but it is not necessary that the injury in the precise form in which it in fact resulted should have been foreseen.

6. The failure of the engineer to stop his slowly moving engine which the employee was intending to board is *held* not a proximate cause of the death of such employee, as the engineer was not bound to anticipate that the employee would attempt to put his tools on the pilot or that he would become so overbalanced as to fall or step on the other track; the movements of the employee being all unforeseen by and beyond the control of the engineer.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Reversed.*

The deceased, Kasper Wulz, was employed by defendant as a car repairer at Corliss, Wisconsin. On the morning of July 24, 1917, he was sent to Truesdell, Wisconsin, to repair two cars which had come from some place in Illinois. He carried with him a crowbar, two jacks, and a pail containing brasses used as bearings in journal boxes.

Having finished repairing the cars, he collected his tools and walked southward from the platform of the station toward a freight train which was slowly approaching from the south. He walked down the center of the same track; then stepped to the west side of the track between it and the track on which a passenger train was coming from the north. When the freight train reached him he placed his pail upon the engine pilot, and, a moment later, walked beside the pilot and attempted to push the pail to a more secure position.

At this point there is a double track.  The passenger train was approaching from the north at a speed in excess of forty miles an hour.  Deceased stepped or stumbled upon the other track and was struck by the pilot-beam of the approaching engine and killed.  The witness who had the best opportunity to see how the accident happened testified as follows:

"I was employed by the Milwaukee road in July, 1917, and recall an accident happening to one Wulz near Truesdell, Wisconsin.  I was employed as a brakeman on a freight train.  I was the head brakeman and I was sitting on the front seat on the fireman's side looking out of the window.  I saw the accident.  I saw the man coming across the track, and he had a crowbar and two jacks on the end of the crowbar over his back, and a pail; I cannot describe what was in the pail, but according to the heft of it there must have been some brasses and waste in it, and he tried to put the pail on the front of the engine, and in doing so he did not get it on quite enough, and as the engine went by him a little ways he turned around and tried to run after it again and put it back on; push it on further, facing towards the front of the engine; and in doing this he kind of got up close to it and stood up straight, and by doing this he tipped the crowbar with the two jacks on his back, up.  The crowbar slipped off.  The jacks kind of slipped back on the crowbar and overbalanced him, which balanced him back towards the track which '24' was coming up.  I hollered at him, but he couldn't hear me, and it was already then too late.  He was too far, it didn't do any good.  I was looking directly at him all the time.  I never kept my eye off of him from the time I saw him until I went back to look at him.  I yelled as loud as I could.  The window was open. His feet were at an angle.  He had one foot over the rail and one on the other side.  That was the time he hit him, leaning this way, facing the passenger train '24.' "

It is undisputed that the cars repaired were being used in interstate commerce; that Wulz had completed the actual repairing and was returning to his regular place of employment; and that as Wulz approached the train the engineer

told the fireman to assist him to board the engine. The engineer saw the approaching passenger train and saw Wulz walking between the rails, and when Wulz disappeared from view (by reason of his stepping between the two tracks) he did not attempt to stop the train until told by the fireman that a man had been struck.

The substance of the jury's findings was as follows: That the engineer of the freight train was negligent in not stopping to allow Wulz to board the engine; that the death was caused by such negligence; that the negligence of Wulz proximately contributed to his death, and was forty per cent. of all the negligence of Wulz and the engineer; that Wulz assumed the risks incident to going between the tracks; and that the pecuniary loss suffered by his widow was $6,000. The trial court held that Wulz at the time of his death was engaged in interstate commerce.

Plaintiff moved for judgment on the verdict for $6,000 for the reason that the evidence showed that deceased was not engaged in interstate commerce at the time of his death, and in the alternative, if that motion be not granted, to change the answer finding that Wulz had assumed the risks incident to going between the tracks to "No," and for judgment for $3,600. The latter motion was granted and judgment was ordered accordingly.

There was no claim of negligence in the management of the passenger train. It was undisputed that when the engineer of the freight train saw the deceased approaching his slowly moving engine and coming along the center of the track, he blew the whistle, and that the brakeman, who was seated in the fireman's seat, shouted a warning to the deceased. The bell was ringing and the whistle was blowing on the passenger train. When the engineer of the freight train thought that Wulz intended to get on the engine he told the fireman to help him. It was expected that deceased would try to get on the engine on the east side where there was no danger of any passing train. Instead of doing so

Richter v. Chicago, M. & St. P. R. Co. 176 Wis. 188.

he went on the left side between the main tracks.    It is difficult to locate from the testimony the exact place where the accident happened, and in view of the other testimony it may not be material.

Different inferences were drawn by witnesses concerning a signal given to Wulz.    From some of the evidence it might be inferred that a signal was given to board the train, but the engineer testified that it was to give warning of the danger.

For the appellant there were briefs by *H. J. Killilea* and *Rodger M. Trump,* both of Milwaukee, and oral argument by *Mr. Trump.*

*W. C. Seefeld* of Milwaukee, for the respondent.

JONES, J.    It was alleged in the complaint that both Wulz and the defendant were engaged in interstate commerce. But it is now claimed by plaintiff's counsel that the federal act does not apply.    The cars on which Wulz worked were engaged in interstate commerce.    Although deceased had finished repairing the cars, it was early in the day, and he was on his return to report to the foreman when the accident occurred.

We are convinced that the trial court was right in holding that Wulz was engaged in interstate commerce at the time of the accident.    In the trial court plaintiff relied on *Ill. Cent. R. Co. v. Peery,* 242 U. S. 292, 37 Sup. Ct. 122, where the conductor, on a south-bound trip, where he was injured, was on a train doing interstate business, and on the return trip (south) was on a train engaged in purely intrastate business. The court held that the trips out and back were distinct, in opposite directions, and with different trains, and that the case did not come within the provisions of the federal act.

In the present case the return of Wulz from his work in interstate commerce was but a continuation of the task he had to perform when he started from Corliss and not completed until he reported back at Corliss for further instructions.    It is not necessary that the workman be working

upon a car or siding or on a train engaged in interstate commerce when the injury is received in order to bring him within the provisions of the federal act. If the act performed when the injury occurs is upon an indivisible task connected with interstate commerce, it is sufficient.

The principle is well illustrated in a recent case where the court said:

"In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. See *North Carolina R. Co. v. Zachary,* 232 U. S. 248, 260, 34 Sup. Ct. 305. Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work and partook of the character of that work as a whole, for it was no more an incident of one part than of another. His day's work was in both interstate and intrastate commerce, and so when he was leaving the yard at the time of the injury his employment was in both. That he was employed in interstate commerce is therefore plain, and that his employment also extended to intrastate commerce is for present purposes of no importance." *Erie R. Co. v. Winfield,* 244 U. S. 170, 37 Sup. Ct. 556; *Shanks v. D., L. & W. R. Co.* 239 U. S. 556, 36 Sup. Ct. 188; *Erie R. Co. v. Welsh,* 242 U. S. 303, 37 Sup. Ct. 116.

The decision of the question whether the employment was within the federal act is necessary, since under that act, if the negligence of plaintiff and defendant proximately concur in causing the injury, contributory negligence on the part of plaintiff is not a complete defense; it is only a question of apportionment of damages. *Kalashian v. Hines,* 171 Wis. 429 (177 N. W. 602) and cases cited on p. 439.

Counsel for plaintiff base their claim of negligence of the engineer on the fact that he did not stop the train. There are several serious objections to the finding of the jury that this was negligence. The case is barren of any proof that it had been the custom of the deceased to ride on the engine with the knowledge of the engineer or fireman or any officer

of the company. There is no proof that trains had ever been stopped to receive him while going to or from his places of employment. There was a rule of the company as follows: "No one except the roadmasters, track foremen on train section, conductor or brakeman of the train will be allowed to ride on the engine without permission from the superintendent or master mechanic." The deceased had no permit whatever.

These facts clearly distinguish the case from some of the cases like *Kunza v. C. & N. W. R. Co.* 140 Wis. 440, 123 N. W. 403, where a regular custom had existed to allow the employee to ride upon the engine. In the absence of any proof that Wulz had previously been permitted to ride upon the engine and in the face of the positive rule of the company, the jury was not justified in deciding that it was the duty of the engineer to stop the engine for that purpose. *Spencer v. C., M. & St. P. R. Co.* 161 Wis. 474, 154 N. W. 979.

It is clear from the testimony that the engineer desired to accommodate one of the employees of the company and expected Wulz to board the engine. The train was moving hardly faster than a man could walk, and if deceased had not been incumbered by his tools no assistance would have been necessary. In view of the situation the engineer directed the fireman to assist Wulz in getting on, but evidently neither the fireman nor the engineer expected that deceased would suddenly pass into the zone of danger where he might be struck by a south-bound train on another track. In this connection it is an important fact that Wulz was not killed by the freight train while attempting to board it. He was struck by the passenger train while attempting to place his tools upon the pilot of the freight train.

The real issue on the question of defendant's negligence seems to be, not whether the train should have been stopped to enable Wulz to board it, nor whether insufficient assistance was given for that purpose, but whether the train

Richter v. Chicago, M. & St. P. R. Co. 176 Wis. 188.

should have been stopped to permit Wulz to use the pilot as he tried to use it. Even if there had been a duty to stop the train to enable Wulz to board it, by reason of a former practice or custom, it could not be seriously claimed that there was any duty to stop it for so unusual and unexpected a use as was attempted.

The argument is made by plaintiff's counsel that it was negligence not to stop the train because the engineer realized that there might be injury to Wulz if he made a wrong move and entered on or approached too near the track of the passenger train. It is not contended that an engineer must stop his slowly moving train merely because he sees an employee walking toward him on the same track. It would be laying down a new and very rigid rule that a train must be stopped at depot grounds under such circumstances, or that it is a question for a jury to decide. In respondent's brief we are referred to *Scheuer v. Manitowoc & N. T. Co.* 164 Wis. 333, 159 N. W. 901, where the motorman of an electric car saw that the driver of a team beyond his control was near the zone of danger, and might have stopped the car in time to avoid the collision. Plaintiff also relies on the case of *Kalashian v. Hines,* 171 Wis. 429, 177 N. W. 602, where the plaintiff, with his head turned away, approached the track at a diagonal, which, if continued, was bound to bring him within the zone of danger, and where the jury found that no warning was given. In these cases it was held that there was a jury question, but they do not seem to us to be controlling. The engineer did everything possible without stopping the train to warn Wulz of any possible danger. He had no reason to expect that deceased would suddenly turn in the wrong direction, in close proximity to the track of the passenger train, or that he would attempt to use the pilot of the moving engine as a place for depositing his tools.

The burden rested on the plaintiff to prove not only that defendant was negligent, but also that such negligence was

the proximate cause of the death. This is under the familiar maxim that the law regards the proximate, not the remote, cause. Doubtless the immediate cause of the death was that Wulz stepped in front of, or stumbled against, the passenger train. Notwithstanding this, there might be such a combination of circumstances that this intervening cause would not prevent liability if the negligence of the engineer of the freight train were established. The celebrated case where a squib was thrown down in a market place and caused injury, and many others, might be cited as illustrations of the principle that where one event, according to human experience, is likely to be followed by another event, the person whose wrongful act caused the former event is responsible for the consequences which may flow from the latter. The rule is based upon the fact that the wrong-doer, using reasonable diligence, should have foreseen the result. Under such circumstances the original act still continues the direct and proximate cause and not one which is improbable and remote.

"The question always is, Was there an unbroken connection between the wrongful act and the injury—a continuous operation? Did the facts constitute a continuous succession of events, so linked as to make a natural whole; or was there some new and independent cause intervening between the wrong and the injury?" 1 Thompson, Comm. on Neg. (2d ed.) p. 55, § 52; *Milwaukee & St. P. R. Co. v. Kellogg,* 94 U. S. 469, 474; *Lynn G. & E. Co. v. Meriden F. Ins. Co.* 158 Mass. 570, 33 N. E. 690.

In this connection it has been often held that it is not necessary to create liability that the injury in the precise form in which it in fact resulted should have been foreseen. It is enough that it now appears to have been a natural and probable consequence. *Huber v. La Crosse City R. Co.* 92 Wis. 636, 66 N. W. 708; *Hill v. Winsor,* 118 Mass. 251; *Schumaker v. St. P. & D. R. Co.* 46 Minn. 39, 48 N. W. 559.

Richter v. Chicago, M. & St. P. R. Co. 176 Wis. 188.

Applying these familiar rules to the instant case, do we find that the alleged negligence of the engineer in failing to stop the train was the efficient and proximate cause of the injury? It seems clear to us that in the use of reasonable diligence and care he was not bound to anticipate that the deceased would undertake the very unusual and extraordinary act of placing his tools upon the pilot of the moving engine. His movements in passing from a place of safety into proximity to the other track, in attempting to use the engine pilot as a place for depositing his tools, in being so overbalanced as to step or fall upon the other track, were all unforeseen by and beyond the control of defendant or any of its employees.

These movements of the deceased were the intervening and independent causes without which the accident would not have happened and for which defendant was not responsible.

Defendant's counsel urge that there was such an assumption of risk as precluded a recovery. Assumption of risk is a defense under the federal act. But since we hold that the judgment should be reversed on other grounds, it is not necessary to decide this question.

*By the Court.*—Judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the complaint on the merits.