REUL, Administrator, Appellant, vs. WISCONSIN NORTH-WESTERN RAILWAY COMPANY, Respondent.

*May 17—October 23, 1917.*

*Trial: Questions for jury: Master and servant: Injury to railway employee: Negligence of co-employee: Assumption of risk.*

1. Where from the credible evidence in an action reasonable inferences might be drawn in support of the claim of either party, it is error for the trial court to take the case from the jury.
2. In an action by the administrator of a railway employee who sustained fatal injuries while engaged in making a flying switch, the question whether such injuries were proximately caused by negligence of the engineer in operating the engine is *held* to have been one for the jury.
3. If in such case the engineer's negligence was the proximate cause of the injuries and death, it was not a risk which the decedent assumed, within the contemplation of the federal Employers' Liability Act.

APPEAL from a judgment of the circuit court for Marinette county: W. B. QUINLAN, Circuit Judge. *Reversed.*

This is an action by the plaintiff, as administrator of the estate of Joseph Lucia, deceased, to recover damages from the defendant, the *Wisconsin Northwestern Railway Company,* for the injuries and death of Joseph Lucia, caused by the alleged negligence of the defendant.

Joseph Lucia was employed by the defendant as conductor on one of its trains making regular trips from Taylor Rapids

to Girard Junction, Wisconsin. The trains were used principally to haul logs from Taylor Rapids to Menominee, Michigan.

On January 5, 1916, Joseph Lucia, who at the time of the accident was doing a brakeman's work, in making a cut for the purpose of making a "flying switch" or dropping some flat cars, which constituted part of the train, onto a sidetrack, fell from the car, receiving injuries which resulted in his death some hours later. At the close of the testimony the circuit court awarded judgment dismissing the plaintiff's complaint on the merits.

For the appellant there was a brief by *Martin, Martin & Martin* of Green Bay, attorneys, and *J. C. Morgan* of Wausaukee, of counsel, and oral argument by *John F. Martin.*

For the respondent there was a brief by *Kreutzer, Bird, Okoneski & Puchner* of Wausau, and oral argument by *C. B. Bird.*

The following opinion was filed June 12, 1917:

SIEBECKER, J.   The plaintiff alleged in his complaint that the accident was due to the negligence of the defendant in employing only one brakeman instead of two, thereby compelling Joseph Lucia to perform part of the brakeman's work; that the defendant was negligent in not establishing and publishing certain rules and regulations and seeing that they were observed by members of the train crew; that the engineer was guilty of negligence in failing to exercise reasonable care in operating the locomotive engine for the purpose of making the "flying switch" by omitting the ordinary precautions for avoiding injury to the deceased.

In order to permit Joseph Lucia to make the "flying switch" he was required to take a position on the side of the box car, where he stood upon an iron foot-rest or stirrup at the bottom of the car and held on with his hands to an iron handhold attached to the side of the car. While in this posi-

tion he was obliged to reach around the side of the box car with his left hand to grasp a lever placed on the flat car coupled to the box car for the purpose of pulling the coupling pin of these two cars and thus make it possible to make the drop or "flying switch."

The plaintiff claims that in order to make the "flying switch" it was the duty of the engineer to slacken the speed of his engine gradually and to "give slack" in order that Joseph Lucia might pull the pin; and that it was also the duty of the engineer not to speed up his engine in its forward movement until Joseph Lucia, by a signal, notified him that he had pulled the pin; and that it was also the duty of the engineer to watch from his cab on the engine the movements of Joseph Lucia and not to speed up and move his engine forward until he had received such a signal.

The plaintiff claims that the engineer carelessly and negligently failed to perform these duties in the ordinary and usual manner, in that after giving slack he rapidly moved the engine forward without waiting for a signal from Lucia to do so and while Lucia was still attempting to pull the coupling pin, and that this careless and sudden moving forward of the engine caused Lucia to lose his balance and fall from the box car, injuring him seriously, which resulted in his death.

The defendant alleges that the conduct of the engineer in giving slack and then going forward without signal from Lucia was not different from the ordinary and customary way, that the person about to pull the pin sometimes signals the engineer and sometimes not, and that the engineer on the occasion in question leaned from his cab and tried to see Lucia but could not see him. The defendant also alleges that the engineer's moving of the train ahead without the signal was not the cause of Lucia's fall resulting in his death.

It appears that the train in question was composed of an engine, a tender, a box car, ten flat cars, and a caboose, and

was returning to Bird Center for the purpose of reloading, and that the accident occurred near a switch on this return trip where it had been decided to make a "flying switch" for the purpose of transferring in front of the engine the five flat cars immediately behind the box car. To accomplish this the train came to a stop some distance from the switch. All but five cars were cut off the rear end of the train, leaving five empty flat cars and the box car attached to the engine to approach the switch with sufficient speed to give the five flat cars a momentum, just before reaching the switch, which would cause them to run onto the sidetrack when detached. Lucia had cut off all but the five flat cars, passed to the box car while the engine and cars were standing still, and took his position on the side of the box car at the rear right-hand side, standing on the iron foot-rest attached to the bottom of the car, with his right hand holding onto an iron handhold on the side of the car. At this point of preparing to make the "flying switch," the engine was about 600 feet north of the switch at which the brakeman was stationed to throw the switch at the proper time. The engineer was in his cab looking back at Lucia, awaiting the signal to advance. Lucia gave the signal to advance from his position on the side of the box car and the engineer moved forward, attaining a speed of from ten to twelve miles an hour. The track is slightly up grade to a point about fifty feet north of the switch and was curved from the switch toward the left for some distance southward. When the engine was at a point somewhere between the switch and a point four or five car lengths to the north, the engineer slacked his engine for Lucia to pull the pin and started up with a sudden movement without waiting for or receiving a signal from Lucia to do so. Lucia had not succeeded in pulling the pin and uncoupling the cars as had been planned when the engine started up again, and so the train of flat and box cars remained attached and followed the engine in its forward movement un-

til it stopped at a point where the rear flat car was about seventy feet south of the switch. At this time Lucia was found sixty feet south of the switch, outside and alongside of the right-hand rail with his feet forward. No one saw him fall. He was seriously injured. The accident happened about 11:30 o'clock a. m. and he died at 6 o'clock p. m. the same day.

The evidence shows that in order to uncouple the flat car as contemplated to make the "flying switch," Lucia had to reach around the end of the box car with his left hand while leaning toward the flat car standing on the foothold; holding onto the handhold with his right hand, and grasp the handle of the lever attached to the flat car so as to operate this device to pull the coupling pin when the proper slack had been given. It is apparent that Lucia during this operation was necessarily in a reclining or leaning position and that he would necessarily remain in this position until he had pulled the pin to uncouple the cars, and that he would resume the erect position before giving the signal to the engineer to advance so as to pull away from the detached cars and permit them to run onto the sidetrack. The evidence is in dispute whether or not the engineer could see Lucia at any time after he gave Lucia "slack" to pull the coupling pin, but there is no dispute but that he advanced suddenly after giving "slack" without a signal from Lucia to do so. There is evidence tending to show that Lucia persisted in the leaning position, apparently attempting to operate the lever for pulling the pin, until he had, or nearly had, approached the switch where Miller, the brakeman, was stationed to throw the switch when the cars separated to make the "flying switch." The conditions surrounding Lucia during the operation as detailed by the evidence tend to show the hazards and dangers to which he must inevitably have been exposed in performing the duties incident to this employment. Viewing them in the light of common knowledge, it is manifest

that a sudden forward movement of the car he was on would naturally tend to prevent him from regaining the erect and secure position on the side of the car that was usually taken to give the signal to the engineer to advance after the cars had been successfully uncoupled, and that such movement of the engine would tend to cause him to lose control of his security and safety in this position and thus tend to cause him to fall off the car.

The testimony of the engineer and the fireman permits of this inference. The effect thereof is concisely summed up by the engineer in the following:

"*Q.* You knew that moving forward without getting any signal from the man pulling the pin was a pretty dangerous thing? *A.* Yes, sir. *Q.* You knew in doing it it was pretty likely to result in his injury? *A.* I don't know if it was or not. *Q.* . . . . When you said it was dangerous you meant he was likely to get hurt, didn't you? *A.* Yes, sir."

This is very direct opinion evidence interpreting the effect of the sudden forward movement of the engine while Lucia was in the act of performing his duty in uncoupling the flat cars in question and its dangerous effect as to Lucia's safety. The fact of Lucia's falling off the car at the time and place cannot be questioned. There are no facts or circumstances tending to show that his falling off the train was attributable to any cause not connected with the operation of the train. Whether the facts are disputed or undisputed, if different minds are naturally and honestly led to different conclusions in determining whether or not the want of ordinary care on the part of the engineer in operating the train at the time in question was the proximate cause of producing Lucia's death, then the case presents a jury issue and it was clearly error to take it from the jury. It is abundantly established that if there is any credible evidence in the case from which reasonable inferences may be drawn in support of the claim of either party the court cannot assume to decide the controversy

as a matter of law. *Morgan v. Pleshek,* 120 Wis. 306, 97 N. W. 916, and cases cited; *Calhoun v. G. N. R. Co.* 162 Wis. 264, 156 N. W. 198; *Winchel v. Goodyear,* 126 Wis. 271, 105 N. W. 824, and cases cited.

We are persuaded that the facts and circumstances shown by the evidence required submission of the case to a jury and that the court erred in holding that the evidence presented no jury question. If it shall be determined that the engineer's negligence was the proximate cause of Lucia's death, then under the facts and circumstances disclosed by the record he did not assume the risk within the contemplation of the federal statute governing the case. *Graber v. D., S. S. & A. R. Co.* 159 Wis. 414, 150 N. W. 489.

*By the Court.*—The judgment is reversed, and the cause is remanded for a new trial.

A motion for a rehearing was denied, with $25 costs, on October 23, 1917.