OLSON, Respondent, vs. HERMANSEN and another, imp., Appellants.
MICHELSON, Respondent, vs. HERMANSEN and another, imp., Appellants.

*May 8—October 9, 1928.*

For the appellant Mrs. Melvin Hermansen there was a brief by *Grady, Farnsworth & Walker* of Portage, and oral argument by *Dorothy Walker.*

For the appellant Wisconsin Automobile Insurance Com-

pany there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, attorneys, and *Philip Snodgrass* of Monroe and *Arthur B. Doe* of Milwaukee, of counsel; and the cause was argued orally by *Mr. Harold M. Wilkie* and *Mr. Doe*.

For the respondents there was a brief by *Olin & Butler*, and oral argument by *Robert M. Rieser*, all of Madison.

The following opinion was filed June 18, 1928:

OWEN, J. These actions were consolidated and tried together, they were briefed and argued together in this court, and will be disposed of in a single opinion.

The principal question discussed upon this appeal is whether the evidence sustains the finding of the jury that Mrs. Hermansen was driving her car at an unlawful rate of speed, which at the time was limited to thirty miles an hour. Mrs. Hermansen was examined at great length concerning the rate of speed at which she was driving. She was by no means an adverse witness for the plaintiffs. At one point in her testimony she was made to say that she was driving at thirty-one miles an hour as she reached the top of a little hill 770 feet from the place of the accident. She testified positively, however, that from that point to the place of the accident she reduced the flow of gas and reduced her speed, and that at the time of the accident she was driving between twenty-five and thirty miles per hour. In all of the statements made by her to the attorneys for the insurance company prior to the trial she said that she was driving at her usual gait, which was between twenty-five and thirty miles per hour.

The witness Robert Schnering, who was standing by the team on the left-hand side of the road and observed the approach of the Hermansen car, testified that the car was going between twenty-five and thirty miles an hour. He based his opinion upon his observation of the car while it

was coming the distance of about one block immediately prior to the accident, although upon cross-examination he admitted that it might have been going a couple of miles over thirty miles an hour. However, his estimate of the speed was between twenty-five and thirty miles an hour. He also testified that she was driving at an ordinary rate of speed and no faster than he had seen her drive many times before.

Jay Bradley, the owner of the team and the dogs, testified that the Hermansen car was going thirty-five miles an hour. He was coming from his house, about sixty rods beyond the team, and at or just before the time of the accident he was getting into his Ford car. He does not testify how long he observed the Hermansen car, but he does say that he was not concentrating his attention on the approaching car, and that he was not paying any more attention to it than he paid to the average car that he saw pass along the road, although he insists that he thought the car was going pretty fast; there was nothing unusual about the speed of the car; a great many cars passed along that same highway at the same rate of speed. This testimony of Bradley is the only testimony in the case that justifies a finding that Mrs. Hermansen was driving more than thirty miles per hour. It is apparent that this estimate is based upon the most casual observation; that there was nothing about the speed of the approaching car to attract attention. It was approaching at about the same rate of speed that cars usually drive along that highway. Just before the accident Bradley was getting into his own car. If so, he must have been standing sidewise to the approaching car, and his attention could not have been closely applied to the rate of speed at which the car was approaching. It was said in *Ronning v. State,* 184 Wis. 651, at p. 656, 200 N. W. 394, at p. 396, that similar evidence "has little or no probative force." In *Riger v. C. & N. W. R. Co.* 156 Wis. 86, 144 N. W. 204, it was said that such evidence was a mere matter of opinion, and a verdict

supported by the testimony of a single witness that a train was going sixteen miles per hour, as opposed to the testimony of numerous witnesses that the rate of speed was from four to seven miles per hour, was set aside.

If the ultimate disposition of this case depended upon the finding that Mrs. Hermansen was driving more than thirty miles per hour, we should be very reluctant to let the verdict stand upon this testimony. But there is another aspect to the case which renders that finding immaterial.

The relation of host and guest obtained between Mrs. Hermansen on the one hand and Mrs. Olson and Mrs. Michelson on the other. The duties which Mrs. Hermansen owed to Mrs. Michelson and Mrs. Olson were those of host to guests. That duty has been defined to be the exercise of ordinary care not to increase the danger to the guest or to create a new danger. *Cleary v. Eckart,* 191 Wis. 114, 117, 210 N. W. 267. It appears without dispute that Mrs. Michelson and Mrs. Olson had frequently ridden with Mrs. Hermansen in her Ford car; that they were thoroughly familiar with her driving experience and her driving habits. It appears by every witness who testified in this case that at the time of the accident Mrs. Hermansen was driving as she usually drove, and was driving at her customary and usual rate of speed. Mrs. Hermansen testifies to that over and over again. Mrs. Michelson testified that she drove and handled the car as she usually did, and that she could see no difference between the manner she drove and handled the car on that day and at the time of the accident, and that she did not think Mrs. Hermansen was to be blamed for the manner in which she drove the car. This was stricken out by the trial court, but it should have been permitted to stand. She further testified that she never thought of suing Mrs. Hermansen, and insisted that she had not commenced an action against her. It further appears that the best of relations were maintained between the Olson and the Hermansen

families after the accident. A daughter of Mrs. Hermansen lived with Mr. Olson for some time after the accident and prior to the commencement of the action. Under these facts, it would seem that it was immaterial whether Mrs. Hermansen was driving thirty or thirty-five or forty miles an hour at the time of the accident. She was driving at her usual and customary rate of speed, with which both Mrs. Olson and Mrs. Michelson were perfectly familiar, and when they accepted Mrs. Hermansen's hospitality to ride with her to the picnic at Columbus they accepted whatever risk attended the degree of proficiency which Mrs. Hermansen had acquired as a driver, and her usual and customary habits of driving, with which they were familiar. *Cleary v. Eckart,* 191 Wis. 114, 210 N. W. 267; *Krause v. Hall,* 195 Wis. 565, 217 N. W. 290. Perhaps this doctrine is not squarely declared in those cases, but it is a doctrine which logically follows from what is therein stated, and we think the doctrine rests upon the clearest principles of law and common sense. The doctrine was assumed in *Krause v. Hall,* but recovery was permitted in that case because it was held that the defendant's habits of driving, with which Miss Krause was familiar, were not the proximate cause of the accident in that case.

An argument was made on the part of counsel for the plaintiffs that the fact that they got a late start and only had ten minutes in which to reach Columbus at the appointed time for the picnic, lends itself to the conclusion that Mrs. Hermansen was driving faster than usual on that day. If this be so, it was by the acquiescence of every one. They all appreciated the fact that they got a late start and that they would be late for the picnic. Luella Olson, a daughter of Mrs. Olson, nineteen years of age, who was in the car, testified that she thought they should "hurry a little, too;" that there had been talk and discussion in the car about hurrying to get to Columbus, and that Mrs. Olson as well

as Mrs. Michelson took part in that talk. Miss Olson further testified that she was not afraid at all of the car as the car was being driven along, and that none of the others expressed any fear about the manner in which it was being driven or operated. This evidences a clear acquiescence on the part of every one in the car concerning the rate of speed at which it was being driven.

The jury further found that Mrs. Hermansen failed to exercise ordinary care in the way in which she managed the car at the time of the accident. There is no evidence whatever to support such finding. The probabilities are that she was startled by the dogs, and that she involuntarily turned to the right. But whether this be true or not, the conduct of the dogs clearly created an emergency, in which she acted in good faith and in accordance with her best degree of skill. The judgment cannot be sustained upon this ground.

This conclusion makes it unnecessary to examine the rather troublesome question of whether the insurance company is released from liability because of a failure on the part of Mrs. Hermansen to co-operate in the defense of the action.

*By the Court.*—Judgments are reversed, and the causes remanded with instructions to enter judgment in favor of the defendants in each case.

A motion for a rehearing was denied, with $25 costs, on October 9, 1928.