Lɪɴᴅ, Administratrix, Respondent, vs. Cʜɪᴄᴀɢᴏ, Mɪʟᴡᴀᴜ-ᴋᴇᴇ, Sᴛ. Pᴀᴜʟ & Pᴀᴄɪғɪᴄ Rᴀɪʟᴡᴀʏ Cᴏᴍᴘᴀɴʏ, Appellant.

*September 13—December 4, 1934.*

For the appellant there were briefs by *Bender, Trump & McIntyre* of Milwaukee, and oral argument by *Rodger M. Trump*.

*Wallace A. Barr*, attorney, and *Albert B. Houghton* of counsel, both of Milwaukee, for the respondent.

The following opinion was filed October 9, 1934:

NELSON, J. In this action the plaintiff seeks to recover damages for the death of Erland P. Lind, contending that it was caused by the negligence of the defendant. The action is brought under the Federal Employers' Liability Act, § 1, 35 U. S. Stats. 65, 45 USCA, § 51, which, so far as material, provides:

"Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier, . . . or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."

It is conceded that the deceased, at the time of his death, was engaged in interstate commerce, and that this controversy is ruled by the established law of the federal courts. *Western & A. R. Co. v. Hughes*, 278 U. S. 496, 49 Sup. Ct. 231; *Atchison, T. & Santa Fe R. Co. v. Saxon*, 284 U. S. 458, 52 Sup. Ct. 229. It has been repeatedly held "that where suit is brought against a railroad for injuries to an employee resulting from its negligence, such negligence is an affirmative fact which plaintiff must establish. The *Nitro-glycerine Case*, 15 Wall. 524, 536, 537; *Patton v. Texas & Pacific R. Co.* 179 U. S. 658, 663, 21 Sup. Ct. 275; *Looney v. Metropolitan R. Co.* 200 U. S. 480, 487, 26 Sup. Ct. 303; *Southern R. Co. v. Bennett*, 233 U. S. 80, 85, 34 Sup. Ct. 566. In proceedings brought under the Federal Employers' Lia-

bility Act rights and obligations depend upon it and applicable principles of common law as interpreted and applied in federal courts; and negligence is essential to recovery. *Seaboard Air Line v. Horton,* 233 U. S. 492, 501, 502, 34 Sup. Ct. 635; *Southern R. Co. v. Gray,* 241 U. S. 333, 339, 36 Sup. Ct. 558; *New York Central R. Co. v. Winfield,* 244 U. S. 147, 150, 37 Sup. Ct. 546; *Erie R. Co. v. Winfield,* 244 U. S. 170, 172, 37 Sup. Ct. 556." *New Orleans & N. E. R. Co. v. Harris,* 247 U. S. 367, 38 Sup. Ct. 535, 536.

Before discussing the applicable principles of law, the facts will be stated. On August 27, 1928, the deceased was employed by the defendant as a flagman or watchman at its Fifth street crossing in the city of Milwaukee. Fifth street runs north and south and crosses several of defendant's tracks a short distance to the west of its passenger station. The general direction of defendant's tracks at the place in question is northeasterly and southwesterly. Fifth street also intersects Clybourn street, which runs east and west across defendant's tracks at the Fifth street crossing. At the time of the accident gates were maintained and operated by the company on the streets mentioned. Lind's duties were those of the ordinary crossing flagman or watchman; that is to say, to warn persons who attempted to cross the tracks after the gates were down, and to prevent persons, automobiles, or other vehicles from going across the tracks in front of moving trains or engines. He did not operate the gates. That duty was performed by another employee who operated them from a tower. A regular Chicago-Milwaukee passenger train arrived at defendant's station at 6:55 o'clock p. m. on time. Shortly after it pulled into the station the depot master uncoupled the locomotive and two express cars from the rest of the train. The locomotive and the two cars were then moved forward along a main track and over the Fifth street crossing to a point beyond a switch which permitted the ex-

press cars to be backed up along an express track located to the north of the main track mentioned. The locomotive was then uncoupled from the express cars and moved forward again over the Fifth street crossing. It then backed up onto the turntable track which curved left to the northeast, north of the express track. It was the duty of the engineer to stop the locomotive on the turntable, inspect it, and then turn it over to defendant's hostler. Some time after the locomotive had been taken to the roundhouse by the hostler, an off-duty brakeman discovered the mangled body of the deceased lying on the turntable. The circumstantial evidence clearly permits of the inference that the deceased was struck by the locomotive mentioned while he was at or near to the north rail of the turntable track, and at a point located a short distance southwest of the turntable.

The deceased's body was evidently dragged from where he was struck to the turntable. No one saw the accident. No one knows just what the flagman was doing when he was struck. At the time the locomotive was moved along the turntable track it was still light, and from the place where the flagman was probably last observed nothing existed to obstruct his view of the approaching locomotive. It is undisputed that the bell of the locomotive was ringing. During all of the movements of the locomotive just described the engineer occupied his seat on the right (north) side of the locomotive. He maintained a constant lookout in whichever direction the locomotive was moving. On account of the curve of the track to the northeast, the height and overhang of the tender, he obviously could not see anyone who was about to cross the turntable track from the opposite or south side thereof, for some distance back of the locomotive. He saw no person standing on the track or attempting to cross it. He left the locomotive on the turntable not knowing that an accident had happened.

The fireman, during all of the movements of the locomotive mentioned, occupied his seat on the left (south) side of the locomotive, and at all times maintained a lookout in the direction that the locomotive was moving. He testified that when the locomotive was stopped westerly of the Fifth street crossing he observed a person standing on the crossing about thirty-five feet south of the flagman's shanty, which was located to the north of the turntable track and a few feet east of the easterly side of Fifth street. Shortly after, while the locomotive was slowly backing up, he noticed that the person theretofore observed was walking in a northerly direction toward the turntable track. So far as the fireman was concerned there obviously existed a zone back of the locomotive, which his vision could not penetrate. On account of the curve of the track, the height and overhang of the tender, the person who was walking toward the turntable track was lost to the fireman's view.

Although the fireman could not positively say that the person seen was the deceased, it seems to be conceded by the parties that it was the deceased. It is clear that the jury so inferred. The distance that the locomotive last moved was about two hundred feet, about three times its own length, and its greatest speed during that movement was not over four to five miles per hour.

At the conclusion of the testimony the defendant's motion for a directed verdict was denied, and the issues were submitted to the jury. The jury acquitted the engineer of any negligence, but found the fireman negligent in not discovering the presence of Lind in a position of danger in time to have avoided injury to him; that such negligence was a legal cause of Lind's injury and death; that Lind himself was guilty of negligence which was the legal cause of his injury and death, and found the percentage of negligence attributable to him. The usual motions for judgment notwithstanding

the verdict, to change the answers of the jury and for judgment upon the verdict as so changed, were made by defendant, all of which were denied.

The defendant contends that the court erred in denying the motions because, (1) the plaintiff failed to prove that the defendant was negligent, or, stated differently, the plaintiff failed to show a violation of any duty which the defendant owed to its flagman, employed by it to guard or watch the crossing; and (2) the deceased, as a matter of law under the decisions of the federal courts, assumed the risk of injury as an incident of his employment as a flagman.

In our view, only the first contention need be considered, since in our opinion the plaintiff wholly failed to prove any negligence on the part of the defendant, and thereby failed to maintain her action.

As before stated, actions grounded on the Federal Employers' Liability Act are governed by the decisions of the federal courts. In *Aerfetz v. Humphreys,* 145 U. S. 418, 12 Sup. Ct. 835, an action brought by a track repairer to recover damages for injuries received by him from a locomotive and train while he was at work repairing the track in a station yard, it was held that the servants of the receiver were guilty of no negligence; that there could have been no thought or expectation on the part of the engineer or of any other employee that the deceased, while at work in a place of danger, would pay no attention to his own safety; that defendant's servants were not bound to assume that any employee familiar with the manner of doing business would be wholly indifferent to the going and coming of the cars. In *Chesapeake & Ohio R. Co. v. Nixon, Adm'x,* 271 U. S. 218, 46 Sup. Ct. 495, an action involving the running down of an experienced section foreman who, at the time of the accident, was operating a railroad velocipede, it was held, Mr. Justice HOLMES speaking for the court, that it was the duty of the

deceased "to rely on his own watchfulness to keep out of the way" of moving trains, and that the duty of the railroad company toward the particular class of employees to which the deceased belonged was not affected by that care which it might owe to others. Although both of these cases were decided prior to the enactment of the Federal Employers' Liability Act, the rules established by them, though often referred to, have not been overruled. It is our opinion that those cases rule the present controversy and compel us to hold that the defendant railway company owed no duty to its flagman employee, hired for the sole purpose of protecting the crossing, to maintain a lookout for him or to stop its locomotive when he was observed walking toward the turntable track, unless and until it discovered him in a position of imminent danger. Compare *Dretzka v. Chicago & N. W. R. Co., ante,* p. 111, 256 N. W. 703.

We have carefully considered the following decisions of the supreme court of the United States: *Norfolk & Western R. Co. v. Earnest,* 229 U. S. 114, 33 Sup. Ct. 654, 57 L. Ed. 1096; *Pedersen v. Delaware, L. & N. R. Co.* 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125; *Seaboard Air Line v. Koennecke,* 239 U. S. 352, 36 Sup. Ct. 126, 60 L. Ed. 324; *Union Pacific R. Co. v. Hadley,* 246 U. S. 330, 333, 38 Sup. Ct. 318, 62 L. Ed. 751; *New York Central Ry. v. Marcone,* 281 U. S. 345, 50 Sup. Ct. 254, 74 L. Ed. 892; *Western & Atlantic R. Co. v. Hughes,* 278 U. S. 496, 49 Sup. Ct. 231, 73 L. Ed. 473; and *Rocco v. Lehigh Valley R. Co.* 288 U. S. 275, 53 Sup. Ct. 343, 77 L. Ed. 743; and also the following decisions of our own court: *Ewig v. Chicago, M. & St. P. R. Co.* 167 Wis. 597, 167 N. W. 442, 169 N. W. 429; *Kalashian v. Hines,* 171 Wis. 429, 177 N. W. 602; *Reul v. Wisconsin N. W. R. Co.* 166 Wis. 128, 163 N. W. 189, cited by the plaintiff, but we find nothing in any of those decisions which militates against the conclusion

reached. In each of the cases cited, where the liability of the railroad company was sustained, there was evidence of negligence on the part of the railroad company, giving rise to a jury question.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.

A motion for a rehearing was denied, with $25 costs, on December 4, 1934.