BOHREN, Guardian *ad litem,* Respondent, vs. LAUTEN-SCHLAGER and another, Appellants. [Two cases.]

*December 2, 1941—January 13, 1942.*

401

For the appellants there was a brief by *Benton, Bosser, Becker & Parnell,* attorneys, and *David Fulton* of counsel, all of Appleton, and oral argument by *A. W. Parnell.*

*Elmer R. Honkamp* of Appleton, for the respondent.

FRITZ, J.   The accident in which Robert Bohren, Jr., sustained injuries because of which he and his father seek to recover damages herein, happened on the night of March 28, 1940.   Robert Bohren, Jr., aged fifteen, was a guest in an automobile driven by James Lautenschlager, aged sixteen years.   They were accompanied by two other boys,—Patrick Bradley, who sat in the front seat with the driver, and by Roy Krummenacher, who sat to the right of Robert Bohren, Jr., in the rear seat.   James had called for the boys in and near

the village in which he resided, and after driving several miles at thirty-five to forty-five miles per hour, they proceeded northward on County Trunk T, a rolling highway with a twenty-feet-wide black-top roadway and graveled shoulders. The night was dark and cloudy and the highway was wet and ice had formed at spots where trees overshadowed the highway. As the automobile, traveling northward at thirty-five to forty-five miles per hour, was approaching a point where there was a private driveway entrance to a farm on the east side of the highway, the car left the black-top roadway and traveled northeasterly in two or three inches of snow and slush on the east shoulder for forty-five feet in a straight line until the right front wheel struck a mound or hummock of snow and ice about one foot high, which was on the shoulder about two feet east of the black-top, and at the south side of the driveway entrance. From there, as was shown by skid marks in the snow and slush, the rear end of the car swung around to the north and east for thirty-three feet and ten inches, across and beyond the driveway and a shallow ditch until it struck a tree, fourteen feet east of the black-top roadway. Roy Krummenacher and the driver, James Lautenschlager, were killed; and Robert Bohren, Jr., was injured.

The jury found that the driver was causally negligent in respect to (1) lookout, and (2) management and control; and that Robert Bohren, Jr., did not assume the risk of the driver's negligence in the latter respect. The court denied defendants' motions to have the court substitute for the jury's answers, findings by the court that the driver was not causally negligent in either respect, and that Robert Bohren, Jr., assumed the risk of any such negligence on the part of the driver; and also denied defendants' motion for judgment notwithstanding the verdict.

On this appeal defendants contend, in relation to the question as to negligence on the part of the driver in respect to management and control, that there is no proof either from

the lips of the survivors, Robert Bohren, Jr., and Patrick Bradley, or in view of the physical circumstances established by the evidence to show that the driver turned his wheel, applied his brakes, accelerated or decelerated the speed of his car, or did any other act which might have caused it to leave the highway, or which can be deemed to otherwise show any negligence whatsoever as to his control and management. Defendants claimed that the car was not negligently driven off the road by James Lautenschlager, but that it suddenly and unexpectedly skidded off the black-top across the shoulder to the hummock and there became out of control. In this connection defendants rely on the presumption that the driver, being deceased, is presumed to have exercised ordinary care for his own safety. *Seligman v. Hammond,* 205 Wis. 199, 233, 236 N. W. 115. On the other hand plaintiff contends that the evidence, and particularly the physical facts established thereby, reasonably admit of finding that while the car was still subject to his control, it was operated by the driver in such manner that it was permitted to run on and across the shoulder until it struck the hummock of snow and ice, and then began to skid and became out of control; and that therefore the jury was warranted in finding that there was causal negligence on the part of the driver in his control and management of the car. A review of the evidence discloses that the plaintiff's contentions must be sustained.

Robert Bohren, Jr., one of the two surviving occupants of the car, testified that he did not know where it began to skid; and although some testimony by Patrick Bradley admitted finding that the car skidded before it left the black-top, there is such confusion and conflict in his testimony on this subject as to render it inconclusive. On the other hand, there was credible evidence to the effect that the highway was straight and level for over one thousand feet south of the place at which the car ran onto the shoulder from the black-top roadway, and that although the outer edges of the black-top were icy, there

was an open stretch down the center at least the width of an automobile. In the two to three inches deep snow and slush on the east shoulder there were wheel marks showing that from where the right front wheel entered upon the shoulder it traveled diagonally in a straight line the distance of forty-five feet to the hummock of snow and ice, which was a "couple feet" from the edge of the black-top, at the south-side edge of the private driveway entrance. Charles Steidl, an apparently experienced highway patrolman and well qualified witness, testified that,—

"There was a little snow along the embankment. We could see where the wheels ran along. This mark extended to the . . . southeast portion of the driveway. At that point there was a hump of snow and frozen ice. The mark which I have just described was 45 feet and 2 inches in length. I indicate with the letter (x) the position of the hump of snow and ice. . . . From my experience I would say that the car was traveling straight ahead as it came up to the driveway. From looking at that mark I don't think the car was sliding."

"By the court: Mr. Steidl, about how deep was that snow in which you found those marks?"

"It was snow and slush of about two to three inches in depth. . . . I would say that the wheel which made that mark was rolling. This mark continued to point (x). From point (x) the mark showed indications of skidding. They turned in a different angle. . . . I would say that the mark which I saw leading to point (x) was made by a revolving rather than a sliding wheel. I say this because if skidding it would push up the snow and a rolling wheel would make a definite straight track to the driveway. . . . There was no other mark to indicate the maneuver of the car before the mark which I have described."

In view of that evidence and particularly the facts that the car was not skidding while it ran with its wheel revolving forty-five feet in a straight line on the shoulder and did not commence to skid until the right front wheel struck the hummock upon partly crossing the shoulder, the jury could reason-

ably infer that the driver neither applied the brakes nor endeavored to turn the car back to the black-top roadway, and that therefore he was causally negligent in his control and management of the car while it was permitted to travel on and across the shoulder. Consequently, defendants' contention that the court erred in denying their motion to change the jury's findings in that respect cannot be sustained.

Defendants also contend that the court erred in denying their motion to change the jury's finding that Robert Bohren, Jr., did not assume the risk created by the driver's negligence as to control and management. This contention likewise cannot be sustained. There was no evidence that there had been, to the knowledge of Robert Bohren, Jr., any similar departure from the traveled roadway and operation of the car on and across a shoulder without applying brakes or attempting to return to the roadway, or any other similarly negligent conduct on the part of the driver in his management and control of the car at any time prior to reaching the place of the accident, because of which it could be said that prior thereto Robert Bohren, Jr., should have refrained from riding in the car or at least protested against such conduct on the part of the driver.

Defendants further contend that the court erred in denying their motions to substitute findings that the driver was not causally negligent as to lookout for findings returned by the jury that he was negligent in this respect. In relation to this issue there was proof that in approaching the place where the car left the black-top one could not distinguish whether there was ice on it or not; and there was no testimony by either of the surviving passengers, or otherwise, as to whether the driver was or was not keeping a lookout or as to what he was or was not doing in that respect. In the absence of evidence to discharge the burden of proof, which was on the plaintiff, to establish affirmatively that there was a negligent failure on the part of the driver to keep a proper lookout, and particularly

in view of the presumption that the deceased at the time of and prior to the collision was exercising due care for his own safety (*Ray v. Milwaukee Automobile Ins. Co.* 230 Wis. 323, 283 N. W. 799; *Ledvina v. Ebert,* 237 Wis. 358, 296 N. W. 110), there was clearly no basis whatsoever for the jury's finding that he negligently failed to keep a proper lookout. Consequently, the court erred in denying defendants' motion to change the jury's findings in that respect.

It is further contended by defendants that the court erred in denying their request to submit to the jury, in relation to negligence on the part of the driver in control and management, the question: "Was such negligence on the part of the deceased, James Lautenschlager, so found by you, the result of a lack of skill or judgment on his part?" This question presented an issue which the defendants were clearly entitled to have submitted to the jury under the evidence in these cases. Findings that the driver was causally negligent as to management and control did not constitute sufficient basis to render him, as the host, liable for injury caused thereby to his guest, Robert Bohren, Jr. It is well established that to his guest, an operator of an automobile owes no greater duty as to his control and management thereof than to exercise the skill and judgment which he possesses. Negligence on the part of the host in his control and management does not constitute an actionable breach of the duty which he owes to his guest, as to render him liable for injury to the latter if the host's negligent conduct was the result of lack of skill or judgment on his part. *Cleary v. Eckart,* 191 Wis. 114, 118, 210 N. W. 267, 51 A. L. R. 576; *Eisenhut v. Eisenhut,* 212 Wis. 467, 248 N. W. 440, 250 N. W. 441; *Young v. Nunn, Bush & Weldon Shoe Co.* 212 Wis. 403, 249 N. W. 278. As we said in the *Eisenhut Case,*—

"This court is committed to the doctrine that a guest in an automobile assumes the risks incident to the skill of the driver. 'If the host driving the car conscientiously exercises the skill

possessed by him in handling the car in emergencies,' the guest has no right to demand more. The guest does not 'have a right to demand of the host a degree of skill for the security of the guest which the host is utterly unable to exercise for his own protection.' " (p. 470.)

". . . while it is stated in several opinions of this court that the guest assumes the risk incident to the degree of skill possessed by the host, this is not the fundamental ground upon which the exemption of a host from liability to a guest for injuries sustained through lack of experience of the host is based. The fundamental basis of the exemption is that the host has not violated any duty owed to the guest, and exemption on that basis applies to a child of tender years as well as to an adult." (p. 473.)

"The rule that a host owes no duty to a guest in his automobile to exercise a degree of skill that he does not possess, with like reason applies to a child as well as to an adult. Thus the defendant is not liable to the plaintiff Renata Eisenhut, not because the child voluntarily assumed the risk incident to his lack of experience, but because the defendant owed no duty toward the child to exercise a degree of skill which he was, through lack of experience under the circumstances involved, unable to exercise." (p. 474.)

In passing upon the necessity for a finding as to whether negligence on the part of the host as to his control was or was not the result of a lack of skill or judgment, we said in the *Young Case,*—

"The first [difficulty in order to entitle plaintiff to recover] is that the question of control, which, under all the decisions, involves skill and judgment, was not submitted in such a way as to be the basis for a judgment in a host-guest case. *Roeber v. Pandl, supra; Poneitowcki v. Harres, supra; Standard Accident Ins. Co. v. Runquist, supra.* If the conduct of Petras in this respect constituted negligence, it was essential that there be a finding which would determine whether such negligence was the result of a lack of skill or judgment, or inadvertence. If it was the former, there would be no liability, regardless of the absence of protest, by reason of the rule that compels the guest to accept the host with all his infirmities of skill and judgment." (p. 409.)

The error committed by the court, in refusing to submit the question requested by defendants on that issue as to the driver's lack of skill or judgment, was not remedied or avoided, as plaintiff claims, by the following instruction given in relation to solely the question submitted to the jury as to the guest's assumption of risk, viz.,—

". . . if you are convinced, by a preponderance of evidence, that the deceased exercised such skill as he possessed and such judgment as he was capable of exercising, then you shall answer that question 'Yes.' If not, you shall answer it 'No.' "

This instruction was not given to inform and cannot be deemed to have informed the jury that there was involved in the due performance of the duty of a driver toward his guest the issue as to whether negligent conduct in respect to his control was the result of his lack of skill and judgment. As this issue clearly existed under the evidence herein and a finding thereon was essential in order to determine whether there was an actionable breach of the duty of the driver to the guest, the court's refusal to submit the requested question constituted prejudicial error because of which the defendants are entitled to a new trial.

*By the Court.*—Judgments reversed, and causes remanded with directions to grant a new trial.