BRAATZ, Plaintiff and Appellant, vs. CONTINENTAL CASUALTY COMPANY and another, Defendants: MILWAUKEE AUTOMOBILE INSURANCE COMPANY, LIMITED, MUTUAL, and another, Defendants and Respondents. [Two cases.]

*March 6—April 3, 1956.*

482

For the appellants there was a brief and oral argument by *Alan Shafrin* of Milwaukee.

For the respondents there was a brief and oral argument by *D. J. Regan* of Milwaukee.

STEINLE, J. The trial court was of a mind that the jury's findings were against the preponderance of the evidence, and, principally on that ground, directed that the verdict be set aside. Appellants contend that the trial court was in error in discarding the verdict on such basis. They

maintain that the proper test in determining a motion to set aside a verdict is whether there was any credible evidence which supported the jury's answers. Appellants are correct in that contention. A trial court should not assume to set aside a verdict when its ruling would require it to pass upon the credibility of witnesses, or weigh testimony, or would require it to resolve conflicts in the evidence. In *Bohner v. Great Atlantic & Pacific Tea Co.* (1933), 211 Wis. 501, 503, 248 N. W. 421, it was said:

"If there is credible evidence in the case which sustains the findings of the jury, the court was in error in setting aside the answers to the questions in the special verdict even though the evidence largely preponderated against the findings of the jury. It is not enough that the evidence, contrary to the jury's findings, preponderates or has a greater convincing power; it must make the evidence which tends to sustain the verdict incredible. Even if, as triers of the fact, we should upon consideration of the evidence reach the conclusion that the evidence strongly preponderates in favor of the position of the trial court, yet it cannot be said that the testimony supporting the verdict is incredible, for some witnesses may have been mistaken and therefore the result may not have been impossible and plaintiff's statements incredible."

In *Webster v. Krembs* (1939), 230 Wis. 252, 256, 282 N. W. 564, when commenting upon the trial court's change of the jury's finding with respect to an item of negligence inquired about in the special verdict, this court declared:

"In passing upon that contention, it must be noted that the fact that the court considered the jury's finding against the preponderance of the evidence would not warrant discarding that finding. If there was any credible evidence which reasonably admitted of inferences sufficient to sustain the jury's finding then what were the proper inferences to be drawn was for the jury, and its findings could not be discarded by the court, . . ."

In *Trautmann v. Charles Schefft & Sons Co.* (1930), 201 Wis. 113, 115, 228 N. W. 741, we held that:

"The rule is well established that if the evidence is conflicting, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any credible evidence which under any reasonable view will support or admit of an inference either for or against the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is a question for the jury should be firmly adhered to, and the court should not assume to answer such question either upon a motion for nonsuit or direction of verdict, or by substituting another answer after the verdict is returned. *Reul v. Wis. N. W. R. Co.* 166 Wis. 128, 163 N. W. 189; *Wiesman v. American Ins. Co.* 184 Wis. 523, 199 N. W. 55, 200 N. W. 304; *Henry v. La Grou,* 200 Wis. 110, 227 N. W. 246. Under that rule, on the appeal of the defendant corporation, the problem is not the broader question of whether the findings of the learned circuit judge are more warranted by the evidence than the answers of the jury, but the inquiry is limited to the narrow issue of whether there is any credible evidence which, under any reasonable view, will admit of inferences which may have been drawn by the jury in finding that Haasch was not guilty of any negligence which was a proximate cause of injury to plaintiff. In other words, the inquiry on this appeal is solely whether there is any credible evidence reasonably admitting of inferences favorable to the contention of the defendant corporation, because of which the jury, proceeding properly, could find that (1) Haasch's driving in excess of 15 miles per hour was not a proximate cause of plaintiff's injury, and that he was not negligent in respect to (1) keeping a proper lookout, (2) properly controlling the truck, or (3) yielding the right of way."

Appellants contend that the jury's findings are supported by credible evidence. They submit that the evidence clearly establishes that Mrs. Myrtle Kourt, the host-driver, increased the danger which the guest, Geraldine Braatz, assumed when she entered the car, and that Mrs. Kourt was causally negli-

gent with respect to the management and control of the car. They maintain further that Mrs. Kourt failed to exercise the skill and judgment that she possessed in the management and control of the car.

It is the position of the respondents, Myrtle Kourt and her carrier, that the evidence establishes as a matter of law that the host did not increase the danger which her guest assumed when she entered the car, and that she was devoid of skill and experience in handling her car with relation to the situation that confronted her immediately before and at the time that Mrs. Braatz was injured.

Of record, there is evidence which the jury was entitled to deem credible to the effect that on May 20, 1953, Mrs. Braatz accompanied Mrs. Kourt on a trip from Milwaukee to Burlington, a distance of about 30 miles, in a Studebaker pickup truck driven by Mrs. Kourt. The trip was made to enable Mrs. Kourt to purchase some eggs. At about 4:15 p. m., when on their way back and while proceeding in a northerly direction on Highway 100 (North 108th street), several blocks south of the Bluemound road in Milwaukee county, the truck in which they were traveling collided with a southbound vehicle driven by Gerald Bartholomew, and Mrs. Braatz was injured. The highway consisted of three lanes, each 10 feet wide. The pavement was dry and the weather was clear. Northerly traffic was light, southerly traffic had been becoming heavier. Mrs. Kourt had been driving at about 25 to 30 miles per hour in the east lane of the highway before the collision. Just prior to the collision a one and one-half ton flat-top Chevrolet truck loaded with rolled sod and driven by the defendant Joseph Takacs, which for several miles had been following the truck driven by Mrs. Kourt, passed it, and continued on for a considerable distance until stopped by an unnamed motorist who told Takacs to return to the scene of the collision in question, which he did.

Mrs. Kourt testified that when the sod truck was passing her, she felt some of the sod brush her arm, and that the sod truck turned sharply in front of her, and she became frightened and pulled off to the east shoulder. While driving on the shoulder, she noticed a car parked on the shoulder ahead of her. She steered her vehicle back onto the highway. She crossed the highway to the west lane and collided with a car driven by Bartholomew. Mrs. Kourt also stated that she did not remember whether she applied her brakes or whether she continued to accelerate her vehicle from the time Takacs passed her until the impact. There was no contact between the sod truck and the host vehicle. At the time of the accident Mrs. Kourt had a temporary permit to operate an automobile. The permit had been issued to her two days before. She testified that she had taken driving lessons three or four days per week for a period of two or three weeks immediately before obtaining the permit. She also stated that twenty-five years previously she had driven a great deal—about five times a week for a period of approximately three years, in the country and in town near where she lived.

Mrs. Braatz testified that she herself had been a truck driver until a short time before the accident; that Mrs. Kourt is a sister of Mrs. Braatz's husband; that Mrs. Kourt had invited her to go along for the ride; that she knew that a person who held a temporary license had to have a licensed driver along when driving; that Mrs. Kourt was not learning how to drive, she knew how to drive; that Mrs. Kourt had driven automobiles while she still lived on the farm years before. Specifically she testified:

"Well [she] used proper precaution, like I would drive or you—anybody else that used proper precaution. She didn't violate any rules or anything like that. She drove like anybody would drive that knows how to drive, I mean."

Mrs. Braatz also testified that as they were riding along, the sod truck passed them quite closely; that Mrs. Kourt

drove off onto the shoulder of the road; that she moved back to the pavement after traveling on the shoulder for 50 feet and when about 100 feet from the car parked on the shoulder; that the witness thought that the driver moved back to the pavement in order to avoid hitting the parked car; that when back onto the pavement she moved back and forth until her truck struck the car in the west lane; that Mrs. Kourt did not apply the brakes and that the witness believed that she continued to use the accelerator.

The principal issue before us is whether the evidence so appearing of record is adequate to sustain the findings of the jury. The credibility of this evidence and the inferences to be drawn therefrom were clearly matters for the jury's determination.

The trial court in its memorandum decision stated:

"The court believes that this accident was caused by the host's, Myrtle Kourt's, inexperience as a driver, that the faulty judgment which she exercised by reason of a careless observation was based on her inexperience, that an experienced driver would have slowed down by applying the brakes and not have turned suddenly to the right."

The respondents submit that the injuries suffered by the guest were not caused by an inadvertent imperfection in the discharge of the legal duty owed by the host with respect to management and control, but that they were due to lack of skill and experience on the part of the host, a condition which the guest assumed when she entered the car. They urge that the evidence in question actually indicates that the host was not driving negligently. They point to the facts that she had been driving at a lawful speed, and that there is no indication that she failed to maintain a proper lookout or that she had traveled on the wrong side of the road. They maintain that the accident occurred because the host became frightened when confronted with the danger to which she referred, and that because of her limited experience in driv-

ing, she turned off the road and then back onto it. They argue that had she possessed the necessary experience, she would have applied the brakes and thereby avoided the collision. They maintain that her failure to apply the brakes was due entirely to her inexperience; that the fact that she had been driving properly on that part of the trip before the accident, is no criterion, because she had met with no emergency that required the exercise of skill and experience; that the guest knew that the host had a temporary permit and not a regular driver's license; that she also knew that with the exception of a short time before the accident, the host had done no driving for a long period of years. They submit that the guest assumed the risk of the host's inexperience.

The respondents acknowledge that the test is: Did the host-driver fail to exercise such skill and judgment as she possessed? They contend, however, that while the evidence may indicate that she used the best skill and judgment which she possessed, the same was not sufficient to cope with the real or imaginary emergency with which she was confronted, because of her lack of experience as a driver. They maintain that a host owes no duty to a guest to exercise a degree of skill which he or she was unable to exercise because of lack of experience, and they cite rulings to such effect appearing in *Cleary v. Eckart* (1926), 191 Wis. 114, 210 N. W. 267; *Olson v. Hermansen* (1928), 196 Wis. 614, 220 N. W. 203; *Thomas v. Steppert* (1930), 200 Wis. 388, 228 N. W. 513; *Ganzer v. Great American Indemnity Co.* (1932), 209 Wis. 135, 244 N. W. 588; *Eisenhut v. Eisenhut* (1933), 212 Wis. 467, 248 N. W. 440, 250 N. W. 441; *Bohren v. Lautenschlager* (1942), 239 Wis. 400, 1 N. W. (2d) 792; *London & Lancashire Indemnity Co. v. Phoenix Indemnity Co.* (1953), 263 Wis. 171, 56 N. W. (2d) 777.

The appellants maintain that the evidence establishes that before the accident Mrs. Kourt did possess and had demonstrated skill and judgment with respect to the operation

of the motor vehicle. They contend that she was not confronted with an emergency as was the situation in several of the cases relied upon by the respondents and referred to above. They point to the testimony of Takacs, and to the finding of the jury exonerating him of negligence. Takacs had testified that he did not believe that the sod touched the arm of Mrs. Kourt; that the sod was not protruding over the side of the truck; that he did not cut in closely to the truck that Mrs. Kourt was driving. Appellants submit that upon such testimony the jury was entitled to infer that Mrs. Kourt was not confronted with an emergency. They contend that regardless of what may have impelled her to move onto the shoulder, had she desired to remain there, she had but to apply the brakes and stop in order to avoid striking the parked vehicle; that having decided to return to the pavement, she had but to steer her vehicle into the lane in which she had theretofore been proceeding, or she could have used the center lane, and a collision would not have resulted. They submit further that since the evidence indicates that she had theretofore demonstrated ability to steer her car and to apply the brakes, and had also shown ability to operate the truck well and to comply with regulations, the jury was justified in believing that she possessed the simple skill and judgment that was required under the circumstances, but that she failed to exercise the same.

Under the evidence in question the jury was entitled to infer that on the basis of Mrs. Kourt's driving experience— three years of country and town driving twenty-five years ago, and two or three weeks of training in driving before obtaining the permit, coupled with the driving experience of two days after the permit was issued—she possessed sufficient skill and judgment to cope with ordinary driving circumstances. While the respondents do not seriously dispute this consideration, they maintain that the evidence indicates that she did not possess the requisite experience to

cope with the emergency with which she was confronted. Mrs. Kourt testified that her arm was brushed by the sod on the truck driven by Takacs and that said driver cut in closely in front of her when passing. If this testimony were true, she may have been confronted with an emergency and respondents' contention might be said to have force. However, the credibility of her testimony was for the jury, and the jury was entitled to place no credence in it. Since Takacs was found free from negligence, it appears that the jury believed his testimony rather than that of Mrs. Kourt with reference to the proximity of either the sod or his truck to the truck driven by her. The jury was not bound to believe the testimony of Mrs. Kourt that she had become frightened from either a real or imaginary cause. The credibility of such evidence, too, was for the jury. It cannot be held as a matter of law that Mrs. Kourt lacked the experience, skill, or judgment requisite to driving under the prevailing conditions, the existence of an emergency not being conclusive. The jury found that she did not use the skill and judgment that she possessed. There is ample evidence to sustain that finding.

Mrs. Braatz did not assume the increased risk of her host's failure to act in accordance with her capabilities. The negligence of the host as to management and control was momentary, sudden. There had been no previous indication of such conduct on the trip. There was no opportunity for the guest to protest, or to leave the car to avoid injury. As was said in *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 115, 62 N. W. (2d) 549:

"A guest does not assume the risk of a driver's sudden and temporary failure to exercise ordinary care unless the driver's conduct is a practice known to the guest and constant enough to attract the attention of a reasonable person exercising ordinary care. *Tietz v. Blaier,* 250 Wis. 214, 26 N. W. (2d) 551."

Since there is ample evidence to sustain the jury's findings in regard to the host's negligence, and also with respect to her failure to exercise the skill and judgment possessed by her, we are obliged to hold that the plaintiffs were entitled to judgment on the verdict, and that the trial court was in error when it set aside the jury's findings. In view of this conclusion it is not necessary to determine the other questions raised on this appeal.

*By the Court.*—Judgments reversed, and cause remanded with direction to reinstate the verdict, and render judgment on the verdict.

FAIRCHILD, C. J. (*dissenting*). The defendant was an inexperienced driver. The state authorities did not permit her to drive except when accompanied by a duly licensed driver. Sec. 85.08 (7), Stats. The majority, in their opinion, considered this case an ordinary host-guest case. However, there are facts here which contract the limits of the limited liability ordinarily present in the usual host-guest case. The plaintiff herself is primarily responsible for the vehicle's being on a busy three-lane highway with an inexperienced and incompetent driver at the wheel. The driver was inexperienced. She had not touched an automobile to drive it for twenty-five years. She had had but a brief experience at that time, and that experience did not qualify her as a licensed driver. The state authorities recognized that fact. She took lessons, and two days before the accident she was granted a sixty-day permit which allowed her to drive only if accompanied with a duly licensed driver. Her sister-in-law, the plaintiff, volunteered to furnish her with the company of a qualified licensed driver. She (the plaintiff) then assumed the responsibility of the operation of that car. The accident happened. The trial court decided that the risk assumed by the plaintiff prevented her from recovering damages because

of injuries sustained as a result of the inexperience of the driver. It is true that the jury found that the driver failed to exercise such judgment as she possessed. It must be admitted she didn't exercise any. This failure was a factor to be expected and assumed by the plaintiff because of the driver's inexperience. It was within the scope of the risk assumed by the plaintiff.

The accident happened with little occasion for the conduct of the driver. A passing truck frightened the defendant. She turned her truck to the right, got onto the shoulder, turned again to the left, and dashed across her lane, the middle lane, and collided with a truck in the third lane coming from the opposite direction. It is without question she lost control of herself and failed to do anything to avoid the collision. The plaintiff knowingly took the chance of an accident arising from a combination of the elements that were lacking in the development of a driver who could stand as a host in the ordinary sense of that relation. I am of the opinion that the judgment entered below should be affirmed.

Our state doctrine, and that of other states, holds that the supervisor of a permittee is not entitled to recover damages from the driver for an accident arising out of and due to the driver's inexperience. I call attention to the case of *Le Fleur v. Vergilia*, 280 App. Div. 1035, 117 N. Y. Supp. (2d) 244, 245, and quote the following from the opinion in that case:

"We think that a plaintiff who has been licensed by the state of New York to operate a motor vehicle and who voluntarily accompanies a defendant, who has just received a learner's permit, in defendant's car for the purpose of teaching the defendant to drive, assumes the risk of the defendant's inexperience and may not recover damages for personal injuries caused by the lack of skill or inexperience of the defendant and that it was error for the court to fail so to charge. *Cunningham v. Erie R. R. Co.*, 137 App. Div. 506, 121 N. Y. S. 706; *Eisenhut v. Eisenhut*, 212 Wis. 467, 248 N. W. 440, 250 N. W. 441, 91 A. L. R. 549; *Thomas v. Steppert*,

200 Wis. 388, 228 N. W. 513. While we find no case exactly in point in the appellate courts of this state, we think the principle of law laid down in *Murphy v. Steeplechase Amusement Co.,* 250 N. Y. 479, 166 N. E. 173; *Ingersoll v. Onondaga Hockey Club, Inc.,* 245 App. Div. 137, 281 N. Y. S. 505; *Lutzker v. Board of Education of City of N. Y.,* 262 App. Div. 881, 28 N. Y. S. (2d) 496, affirmed 287 N. Y. 822, 41 N. E. (2d) 97, requires us to hold that assumption of risk is a defense in the present case and should have been submitted to the jury."

I include also a quotation from *Thomas v. Steppert,* 200 Wis. 388, 393, 228 N. W. 513:

"Plaintiff knew that the defendant had recently acquired this car, that he was learning to drive it, that but a few days before he did not consider himself sufficiently qualified to ask her to ride with him, and under these circumstances she assumed the dangers incident to his lack of experience."

I am authorized to state that Mr. Justice BROWN joins in this dissent.