JANVIER, Judge.
Plaintiff, a guest passenger in a Volkswagen automobile of her friend, Linda Ray, sustained injuries when, as a result of the sudden stopping of the car by Miss Ray, her head struck the windshield, and, in addition to the slight bruise on her forehead, she sustained a “cervical spinal sprain.”
Miss Ray had secured a policy of liability insurance from Vico Insurance Company of St. Louis, and Miss Jeanne King, plaintiff, by direct action, brought this suit against the said insurer, alleging that the accident had been caused by fault on the part of Miss Ray in unnecessarily and without warning bringing her car to a sudden stop. She prayed for judgment for $36,732.02 and for trial by jury. Miss Ray was not made defendant.
The defendant answered, denying negligence on the part of Miss Ray and averring “that a dog ran out into the street in front of the vehicle,” and that Miss Ray, “acting *136 in a sudden emergency not of her own creation * * *, applied her brakes to avoid hitting the dog.” The said insurer then alleged that the dog had belonged to Douglas Allen, and that the said Allen had negligently, and, in violation of a city ordinance, permitted it to run at large and that, therefore, should it, the insurer, be held liable to plaintiff, there should be judgment in its favor against said Allen for such amount as might be awarded plaintiff. Allen could not be located and there was no service on him. Accordingly, the matter went to trial between plaintiff and the insurer of Miss Ray, and there was a unanimous verdict on which there was judgment in favor of Miss Ray in the sum of $3375. There was also the award of an expert’s fee of $150.
Defendant insurer has appealed, and contends that not only should the judgment be reversed, but that should it be found that there is liability, the amount of the judgment should be reduced.
The policy of insurance included medical payments coverage under which the insurer had agreed to pay the medical expenses of anyone who might be injured as the result of the operation of the car regardless of whether or not there was negligence on the part of the driver. Accordingly, it is conceded that, under this provision of the policy, the medical expenses of plaintiff, amounting to $762, were paid by the insurer.
So far as the facts are concerned, there is no evidence which, except in minor particulars, tends to contradict the story of the accident as related by Miss Ray, the operator of the car.
With the plaintiff alongside her, she was driving in a downtown direction on Caron-delet Street, which is a one-way street, in the direction in which she was operating the car. As she neared the corner of Philip Street, there were vehicles parked on both sides leaving only a narrow roadway open between them. She brought her car to a stop behind another car which had stopped before turning to its right into Philip Street. While both vehicles were stopped, a dog “walked out in the street.” Miss Ray says that the dog “went back and I thought he was gone.” She then started forward — she says, in low gear and at a speed of about five miles an hour and “had gotten about even with the corner” when the dog “ran out in front of me.” She says that after she first saw the dog and it “walked back to the sidewalk,” she “didn’t see him any more until he ran out in front of me.”
Plaintiff says that at that time she was not looking forward and did not see the dog until later because she “had here head down * * She says that she had her purse in her lap and that she “was looking to get a cigarette out of my purse.” When she did look up she says the dog, which, according to her, “was sort of a large dog,” was “either by the side of the street or on the curb.”
Only on two rather unimportant points is there disagreement between Miss King and Miss Ray. Miss Ray says that before starting on the trip downtown, plaintiff had had one “Scotch and water” to drink, but she herself had not taken a drink. Plaintiff says that she had had a drink and that Miss Ray had had one also. There was no effort to show that liquor had had any effect on either.
On one other point the two ladies are not in complete agreement. Miss Ray says that she had stopped her car behind the other vehicle and had then started it when the dog ran into the street, and Miss King at first said that there had been no intervening stop, but later said: “I don’t remember if we did.”
We repeat that there is nothing whatever which tends to contradict the story of Miss Ray, the driver of the car. The record leaves no doubt at all that she had stopped behind the other vehicle; that she had seen the dog walk out into the street and then go back to the sidewalk, “I think, towards Philip Street.”
*137 Accordingly, we feel that in bringing her car to a stop Miss Ray instinctively did exactly what other normal persons in the full possession of their faculties would have done. She brought her car to a sudden and immediate stop. She had no time to consider whether it was best to strike the dog and run the risk of a more serious accident, or to bring the car to a sudden stop.
Here and elsewhere there is abundant authority to the effect that it is not actionable negligence to bring a car to a sudden stop in an emergency not created by the driver where there is an occurrence which may cause serious accident and where the reaction of the driver must take place before there is time to consider the possible result of the sudden stop, and where the driver does what any ordinarily careful driver would have done and docs not increase the peril by acting in an abnormal way.
In Dean v. Travelers Insurance Company, La.App., 171 So.2d 708, we recognized this principle and held that where a sudden emergency arises, the driver “is not to be held to the same high standard as one who is able to survey the alternative courses of action in a calm and unhurried atmosphere.”
It is true that in that case we held the driver of the car at fault for the reason that she did not react as a normal person should have reacted. It appeared that when a child ran out from the left side of the road, the driver of the car, instead of merely trying to stop, released the steering wheel which permitted the car to go “across the road into a ditch and over a culvert, a driveway and up out of the ditch and into a utility pole.”
Referring again to the view that the reaction in an emergency should be the normal reaction of an ordinarily careful person, we said that while the “emotional reaction” of the driver of the car which caused her to lose completely the control of the automobile might have been the normal reaction of that particular driver, it was not the reaction “to be expected of a person of reasonable self-control.”
We find the question of normal reaction in the case of sudden emergency has been discussed many times. In Burhans v. Burhans, 159 Md. 370, 150 A. 795, the driver of a car saw a large dog coming from a side road onto the road on which she was driving. She applied her brakes and attempted to avoid striking the dog. The car skidded, turned around, hit a culvert and turned over. The Court said that there was nothing to show that the driver was negligent in attempting to avoid a collision with the dog and added “nor is it shown, we think, that she did anything in her attempt to avoid a collision with the dog that an ordinarily prudent person would not have done when suddenly placed in such perilous situation.”
In Olson v. Hermansen, 196 Wis. 614, 220 N.W. 203, 61 A.L.R. 1243, two dogs jumped from behind a car in front of the driver’s car, and, in attempting to avoid the dogs, the car turned over and death resulted. The Court, referring to the driver, said: “ * * * the conduct of the dogs clearly created an emergency, in which she acted in good faith and in accordance with her best degree of skill.”
In a New York case, Sills v. Meyers, 171 Misc. 63, 11 N.Y.S.2d 106, the driver of a car saw a cat crossing the highway, and, in attempting to avoid it, brought the car to a sudden stop. In that case the Court held the driver was at fault, but said that the cat in front of the car “was not an emergency” but that “if, of course, a person or a large animal, or a large object, was in the road which if collided with would have caused injury * * *, it would be an emergency * * * ff
In Pickett v. Travelers Ins. Company, La. App., 127 So.2d 547, appears the following:
“The evidence in this case establishes without contradiction that plaintiff’s bull suddenly darted on the highway in front of the insured vehicle, and that *138 the driver of that car then veered to his left and applied his brakes forcefully in an unsuccessful attempt to avoid striking the animal. We think the driver exercised reasonable care in attempting to avoid the accident, and that under the circumstances presented here he was not guilty of actionable negligence in electing to strike the animal rather than to drive off tlie highway and down the embankment which bordered.”
It is true that in the Pickett case Judge Tate dissented, but he did so for the reason that he did not feel that the evidence had sustained the contention that the accident had happened as a result of the “sudden jump into his (driver) path of the bull * * *.” And, in fact, Judge Tate later, in Huval v. Burke, La.App., 160 So.2d 810, cited with approval the Pickett case.
We conclude, then, that unless the reaction of Miss Ray was abnormal and was not the reaction of a reasonably prudent careful 'driver, she was not at fault in bringing her car to a stop. But it is contended that she must have been operating the car at too great a speed and that this was the cause of the injuries which would not have been sustained except for that speed.
Miss Ray said that her speed was not more than five miles an hour; that the car was in low gear, and that she had just started it, and the only evidence which is pointed to as indicating unnecessarily high speed is the statement of Miss King herself that when her head struck the windshield, the windshield “was not broken out or anything like that, but all cracked, you know as you all described, I think, a spider web effect or something.” This in itself does not indicate unduly high speed. In leaning forward to look into her bag, Miss King’s head was nearer to the windshield than it otherwise would have been, especially as the car was a very small one in which the occupants were closer to the windshield than they would have been in a larger car. The striking of the windshield could not have been violent as at first Miss King did not think that she had been injured. She said: “I didn’t think I was hurt at all.” It was not until later in the day when, in spite of the accident, she kept an appointment at the beauty parlor, that the operator there noticed that she “had a little lump on my head.”
We are convinced that Miss Ray operated her car in a normal way, was not running it at an abnormal speed, and did nothing to increase the danger after the emergency became apparent.
The judgment appealed from is annulled, avoided and reversed, and plaintiff’s suit is dismissed at her cost.
Reversed.