EBBEN, Appellant, vs. FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY and another, Respondents.

*January 18—February 15, 1949.*

250

*Frank L. Morrow* of Eau Claire, for the appellant.

For the respondents there was a brief by *Wilcox & Sullivan* of Eau Claire, and oral argument by *Francis J. Wilcox*.

MARTIN, J.   In this case the jury returned a special verdict finding, among other things, the defendant, Donald Boardman, causally negligent as to the management and control of his automobile and in failing to exercise the skill and judgment which he possessed in the management and control of said automobile.   Harvey Ebben, deceased, was not found to be negligent as to the exercise of ordinary care for his own safety or in acquiescing in the manner in which defendant was operating his automobile and thereby assuming the risk of any injury resulting therefrom.   Upon motion after verdict, the trial court changed from "Yes" to "No" the answer to question 6 (did defendant fail to exercise the skill and judgment which he possessed in the management and control of his automobile) and, upon the decision so rendered, judgment was entered dismissing plaintiff's complaint.

The principal question in this case is whether the trial court was warranted in changing the answer of the special verdict with respect to skill and judgment.   This requires an examination of additional facts.

Boardman had been driving automobiles for about sixteen years and up to the time of the accident had been driving daily for one year.   He had driven on all kinds of roads, under all kinds of weather conditions, and had driven over the road in question many times both day and night, and considered himself an able and experienced driver.   He had had experience in getting out of a rutted road and knew what he was required to do in order to get out of a rut safely.   The driver was wide awake at the time of the accident, he was not sleepy, and nothing of an untoward nature had happened up to the time of the accident.   Harvey Ebben, the passenger, was also wide awake.

Exhibit 3, the statement taken by plaintiff's counsel from Donald Boardman, states in part as follows:

"My truck was in perfect mechanical condition and I had no trouble of any kind. . . .

"All of a sudden I felt a heavy thump toward the right front of my truck, and the right front of the truck felt like it was dropping. I pulled the truck to the left and in so doing, the truck swerved toward the left and into a telephone pole. The truck came to a stop against a telephone pole. I was dazed for a moment. The telephone pole sheared off and came down, struck Harvey and killed him instantly.

"I remember distinctly that after the front end of my truck dropped to the right, that I swung the truck sharply and hard to the left. . . .

"My truck was so badly damaged that I could not get parts and sold the remains. My father M. C. Boardman and I, both inspected the truck five or six days after this accident, especially the undercarriage. This inspection was made for the purpose of determining whether or not anything had gone wrong with the truck that might have caused this accident. I found nothing about the truck that might have caused the accident. I took the body off to make a more definite check and found no mechanical defect other than the damage that was done by the crash."

Melvin Boardman, defendant's father, went to the scene of the accident to see if he could determine what had happened. He saw a mark in the rut alongside the concrete on the south side of the road, as though a car had been in the rut and had pulled out and crossed toward the north side of the road. The traffic officer did not find any marks on the south side of the road that he could connect with the accident but his report was that the truck traveled along the north shoulder for a distance of ninety feet, rolled over in the air, left a gap in the marks and came to a stop impaled on a telephone pole one hundred eleven feet east of the point where the truck had first gotten onto the north shoulder. The evi-

dence is clear that at no time did the defendant apply the brakes of the truck.

Defendant's position upon the trial, in contrast to his earlier statement, was that he did not have a feeling that some part of the right front of the truck had dropped down but after he felt the "thump" it seemed like the steering wheel had locked and he couldn't draw it to the left, but that he did not jerk it or apply a great deal of pressure for fear of losing control.

The record, in both the statement and testimony of defendant, discloses that an inspection was made of the truck after the accident but that it did not reveal anything wrong with the steering gear which might have caused the accident. The steering column was bent and pushed right up to the dash, but that would be as a result of the accident.

It was stated in *Le Sage v. Le Sage* (1937), 224 Wis. 57, 61, 271 N. W. 369:

" . . . and as the credibility of the testimony and the proper inferences to be drawn therefrom were questions for the jury, the court should not have substituted its finding to the contrary after the verdict was returned. *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741; *McCaffrey v. Minneapolis, St. P. & S. S. M. R. Co.* 222 Wis. 311, 267 N. W. 326, 330, 268 N. W. 872."

It has also been held, in determining whether or not the trial court erred in setting aside the jury's answer to a question and substituting another answer, that the court must take that view of the evidence which is most favorable to the plaintiff. *Buckley v. Brooks* (1935), 217 Wis. 287, 258 N. W. 614.

From the evidence the jury had a right to believe: That the driver was negligent in permitting the truck to go off the edge of the pavement as defendant testified that the only way the truck could leave the pavement and get onto the shoulder was by driving it off the road and onto the shoulder; that

the truck went out of control, not because defendant did not have experience sufficient to enable him to cope with the situation which confronted him, but that he failed to exercise the skill and judgment which he had gained in operating vehicles over all kinds of roads during a period of sixteen years, and that the jury might infer that pulling a vehicle out of a rut or any other kind of an obstruction by turning the steering wheel hard in either direction, tends to throw the vehicle out of control; that a person of defendant's experience would have slowed down the speed of his truck and applied the brakes and brought it to a stop before attempting to turn when he found that the wheel would not respond to pressure; that he would have permitted the truck to continue in its forward progress until it came to a point on the shoulder where the shoulder was even with the road at which time he would have experienced no difficulty in getting back onto the highway; and the jury could consider that after the truck swerved across the highway an experienced driver traveling at the rate of forty miles per hour could have succeeded in slowing down the truck sufficiently while in the rut or while in the process of crossing the road or during the time that he traveled along the north shoulder, to have stopped before crashing into the pole.

In *Poneitowcki v. Harres* (1930), 200 Wis. 504, 508, 228 N. W. 126, the court held that the evidence clearly presented a jury question as to the driver's negligence, and stated:

"The appellant could see the situation he was in when he left the concrete. He had ample opportunity to slow down to a safe pace to get back on the concrete. He was an experienced driver, and must have been fully cognizant of the danger of his wheels slipping along the side of the concrete, which was approximately six inches higher than the dirt shoulder upon which he was traveling. . . .

"It is contended that appellant was confronted with a sudden emergency which excused him for losing control of his car. We fail to discover any emergency from the testi-

mony of appellant himself. There did not appear to be any obstruction to require him to turn on to the concrete until he could slow down his car to make the turn safely. He had plenty of time to exercise judgment and caution in getting back on the pavement."

In *Bohren v. Lautenschlager* (1942), 239 Wis. 400, 1 N. W. (2d) 792, this court held that it was reversible error in a host-guest case, where the issue was management and control, for the court not to submit the question whether such negligence was the result of lack of skill and judgment.

In *Monsos v. Euler* (1934), 216 Wis. 133, 137, 256 N. W. 630, the court stated:

"The evidence sustains the conclusion that the cause of this accident was the sudden application of the brakes by defendant, and his consequent loss of control over the car. That this was not the proper procedure under such conditions as prevailed is conceded; that every experienced driver knows that a sudden application of the brakes under such conditions will result in skidding and loss of control is not denied. It is evident from the record that defendant was an experienced driver and knew all this. It is contended that under all of the facts the default of defendant was one of judgment or skill, as to which plaintiff assumed the risk. We are of the opinion that the jury was entitled to conclude that defendant did not conscientiously exercise the skill and judgment possessed by him, or utilize the experience that he concededly had. It is further contended that skill involves not only judgment, but the co-ordination necessary actually to accomplish what experience teaches to be the proper course. There is no evidence to support the conclusion that defendant's skill did not measure up to his experience, or that some physical mischance arising out of lack of skill in the sense referred to, prevented defendant from carrying out a course that his experience dictated and that he desired to follow. Defendant's position upon the trial, in contrast with his earlier statements and testimony, was that he did apply the brakes gently and only slammed them on when this course proved ineffective. . . . here the evidence sustains the conclusion that the accident happened not because of lack of skill,

experience, or judgment on the part of defendant, but by reason of his failure conscientiously to exercise such skill, judgment, and experience as he had."

See also *Pecor v. Home Indemnity Co.* (1940), 234 Wis. 407, 413, 291 N. W. 313; *Struck v. Vetter* (1940), 233 Wis. 540, 290 N. W. 131.

The trial court, in its memorandum on decision, cited *Culver v. Webb* (1944), 244 Wis. 478, 12 N. W. (2d) 731, and stated:

"  . . . it would appear that in any event the driver exercised all the skill and judgment which he possessed in the management of his automobile at the time it went out of control, and accordingly there was no failure on his part as to the duty which a host driver owes to his guest passenger."

However, it was stated at page 491 of *Culver v. Webb, supra:*

"As has heretofore been stated, there was a jury question not only whether Culver was negligent as to management and control, but also whether this negligence constituted a failure on his part conscientiously to exercise such judgment and skill as he had."

Defendants have relied on *Baars v. Benda* (1946), 249 Wis. 65, 23 N. W. (2d) 477, and *Storlie v. Hartford Acc. & Ind. Co.* (1947), 251 Wis. 340, 28 N. W. (2d) 920.

In the present case there is sufficient evidence without speculation to sustain the findings of the jury and, therefore, these cases do not apply. We conclude that the jury's findings should be sustained.

We now come to the questions concerning the insurance coverage and the relationship of the driver and passenger. Since these matters were not argued before the trial court and the trial court has not passed upon them, and they were only presented to this court by the defendants, cause is remanded that these issues be heard and determined by the trial court.

*By the Court.*—Judgment reversed, and cause remanded to reinstate the verdict of the jury in favor of plaintiff against defendant, Donald Boardman; and cause remanded for further proceedings in accordance with this opinion as to defendant, Farmers Mutual Automobile Insurance Company.